**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**JANUS INDUSTRIES, doing business as
Acapulco Smoke Shop, and James B.
Janus, Defendants–Appellants.**

Nos. 94–1074, 94–1075, 94–
1113 and 94–1114.

United States Court of Appeals,
Tenth Circuit.

Jan. 18, 1995.

Wade H. Eldridge, Denver, CO, for appellants.

John M. Hutchins, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., D. Colo., and Kathleen M. Tafoya, Asst. U.S. Atty., with him on the brief), Denver, CO, for appellee.

Before ANDERSON and KELLY, Circuit Judges, and COOK,* District Judge.

## STEPHEN H. ANDERSON, Circuit Judge.

Defendant James B. Janus and his company Janus Industries, were charged in a 165–count indictment with sales of drug paraphernalia, 21 U.S.C. §§ 857 and 863, cultivation of marijuana, 21 U.S.C. § 841(a)(1), and money laundering, 18 U.S.C. § 1956(a)(1)(A)(i). The jury returned guilty verdicts as to both Janus and Janus Industries on two of the drug paraphernalia counts, and a guilty verdict as to Mr. Janus on the marijuana count. The parties resolved the money laundering counts by stipulation. Mr. Janus was sentenced to twenty-four months incarceration and required to pay a $50,000 fine. Janus Industries was fined $14,000. The defendants appeal, contending that (1) the district court erred in refusing to grant defendants' motion to suppress evidence gathered pursuant to the search warrant on the grounds that the underlying affidavit was insufficient to establish probable cause, and the warrant obtained by the officers was unconstitutionally overbroad; (2) the district court erred in concluding that the marijuana found during the search was in plain view; (3) the Drug Paraphernalia Act, 21 U.S.C. § 863, is unconstitutional because it lacks an interstate commerce element; (4) the district court abused its discretion in denying defendants' motion for severance; (5) the district court erred in refusing to give defendants' tendered jury instruction No. 5 which stated that the drug paraphernalia statute does not apply to any person legally authorized to distribute such items; (6) the defendants were denied a fair trial because of the prosecutor's statement in closing argument that the defendants' items were "evil"; and (7) the district court erred at sentencing by granting a two-level increase for obstruction of justice and by failing to grant a two-level reduction for acceptance of responsibility. We affirm.

* The Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

1. Janus attempts to raise for the first time in his reply brief on appeal that the affidavit was not

## BACKGROUND

This action arose from a nationwide United States Customs operation ("Operation Pipe") investigating suspected drug paraphernalia dealerships or "head shops." Special Agent Tracy Lembke led the Customs investigation in both Colorado and Wyoming, during the course of which Customs obtained search warrants for seven different shops in the Denver-metro area that were suspected of selling drug paraphernalia. Under Lembke's direction, search teams were divided up and the several warrants were executed simultaneously on January 21, 1991.

While executing one of these warrants at a shop called Rolling Stone Enterprises ("Rolling Stone") customs agents discovered information suggesting that the Acapulco Smoke Shop located at 3520 Brighton Boulevard, although not originally one of the targeted locations, was also engaged in the drug paraphernalia business. Customs then sent Agent Santelli to the Acapulco Smoke Shop as a "potential customer" to verify whether they were selling drug paraphernalia on the premises. Agent Santelli reported that he did see drug paraphernalia for sale and that an employee of the Acapulco Smoke Shop, later identified as Janus, told Santelli that he better get what he wanted tonight because the "narcos were out" and he had "trimmed his shelves." R. Vol. 4 at 114.

Based on the information provided by Agent Santelli and the information recovered in investigating Rolling Stone, Agent Lembke then drafted an affidavit for a warrant to search the premises at 3520 Brighton Boulevard. The subsequently issued warrant authorized the agents to search Janus's premises for "[a]ny and all drug paraphernalia" as defined in the drug paraphernalia statute as well as various documents and business records related to the sale of drug paraphernalia or the proceeds from such sales.[1] R. Vol. 1, Doc. 18, Ex. A.

attached to the warrant. We decline to address this issue because it was neither considered and ruled upon by the district court nor raised in the opening brief. *See Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 720–22 (10th Cir.1993);

Prior to the issuance and arrival of the search warrant, however, Agent Lembke ordered the two-story building at 3520 Brighton Boulevard secured because she had reason to suspect that evidence may be removed. R. Vol. 3 at 4. Three agents arrived at 6:00 p.m. to "sweep" the premises. The agents found three individuals on the premises, one of whom was Janus. The agents informed the individuals that they were free to leave, and ultimately only Janus remained. At some point after securing the premises but prior to the arrival of the warrant, the agents heard a commotion upstairs in the bedroom area; Janus was apparently moving things around. An agent asked Janus what was going on, and Janus reportedly said either "nothing" or "lied." R. Vol. 7 at 810.

By the time agent Lembke arrived with the warrant later that evening, approximately twenty-five federal agents were on the premises to help conduct the search. Agent Lembke went directly to Janus and presented him with a copy of the warrant, reviewed what the agents were there for, and advised him of his rights. Following a video taping of the premises, the agents began searching.

Among other things, the search uncovered a hydroponic garden or grow area in a partly hidden closet upstairs. The closet contained a grow light, watering system, and was panelled with Styrofoam. There were no plants, but the lights were on and the soil was moist. Meanwhile, Agent Burke, an IRS agent who had been assigned to look for documents and financial records in the bedroom area, noticed a dresser that had what appeared to be a concealed bottom drawer. Upon opening the drawer he found seven marijuana plants with moist dirt still clinging to the roots.

## DISCUSSION

### I. Motion to Suppress: Validity of Search Warrant

Before trial Janus moved to suppress all evidence derived from the search on January 21, 1991, on the grounds that (1) Agent Lembke's underlying affidavit was insufficient to establish probable cause to search Janus's premises and (2) the warrant was

overbroad because it failed to state with particularity the things to be seized. The district court denied that motion following a hearing.

In reviewing the denial of a motion to suppress, we must "accept the trial court's findings of fact unless clearly erroneous." *United States v. Dahlman,* 13 F.3d 1391, 1394 (10th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994); *United States v. Wicks,* 995 F.2d 964, 968 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993); *United States v. Carr,* 939 F.2d 1442, 1443 (10th Cir.1991). However, "[w]e review de novo the 'ultimate determination of Fourth Amendment reasonableness.'" *United States v. Little,* 18 F.3d 1499, 1503 (10th Cir.1994) (quoting *United States v. Allen,* 986 F.2d 1354, 1356 (10th Cir.1993)). We must view the evidence in the light most favorable to the government. *Wicks,* 995 F.2d at 969; *Carr,* 939 F.2d at 1443.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *United States v. Mesa–Rincon,* 911 F.2d 1433, 1436 (10th Cir.1990).

### A. Probable Cause

The existence of probable cause is a common sense standard. *Wicks,* 995 F.2d at 972. The Supreme Court has stated that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332.

■ A reviewing court must give great deference to the magistrate's determination of probable cause, *United States v. $149,-442.43 in United States Currency,* 965 F.2d 868, 872 (10th Cir.1992), and we should uphold that conclusion if the "totality of the information contained in the affidavit provided a substantial basis for finding there was a fair probability that evidence of criminal activity would be found" at the Acapulco Smoke Shop. *United States v. Hager,* 969 F.2d 883, 887 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992).

■ Janus argues that the only information the magistrate had suggesting that wrongdoing would be found in the Acapulco Smoke Shop was Agent Santelli's "bald assertion" that he saw "drug paraphernalia." Janus claims that this mere conclusion, without specific examples of precisely what Santelli saw, is insufficient to justify the issuance of a search warrant.

The affidavit in support of the January 21, 1991 search warrant indicates that Agent Santelli reported seeing "a variety of items defined as drug paraphernalia under [the Drug Paraphernalia Statute]" for sale at 3520 Brighton Boulevard. Although Agent Santelli's description was cast in statutory terms, attachment two of the application for the warrant recites subsection (d) of the statute which describes "drug paraphernalia" in great detail and provides several examples.

Moreover, the affidavit contained additional information providing further indicia supporting the conclusion that drug paraphernalia would be found on the premises. For example, the affidavit provided extensive background information related to the investigation of Rolling Stone Enterprises. It stated that the agents had lawfully searched Rolling Stone Enterprises, had seized drug paraphernalia, and had recovered information suggesting that Acapulco Smoke was a supplier for Rolling Stone and one of the largest distributors in Colorado. The affidavit provided specific examples of the paraphernalia found during the Rolling Stone investigation—indicating that the agents were in fact aware of what constitutes "drug paraphernalia"—and Agent Santelli stated that the drug paraphernalia he saw at Acapulco Smoke was substantially the same as that identified at Rolling Stone. R.Vol. 4 at 112. Furthermore, Agent Santelli's conclusion that there was "drug paraphernalia" on the premises was additionally buttressed by Janus's incriminating statement that he was "trimming his shelves" because the "narcos are out." *Id.* at 114. Finally, the affiant's experience and expertise may also be considered in the magistrate judge's calculus, *see Wicks,* 995 F.2d at 972, which, in Agent Lembke's case, consisted of four years as a special agent for U.S. Customs, and assignment to lead Operation Pipe in Wyoming and Colorado—a program directed specifically toward the investigation of drug paraphernalia.

These facts provide sufficient probable cause to support the magistrate's determination that a fair probability existed that drug paraphernalia was for sale at the Acapulco Smoke Shop. Thus, we affirm the district court's conclusion that probable cause supported the issuance of the search warrant.

## B. Particularity

Janus next asserts that the warrant fails to meet the second part of the Fourth Amendment's requirement. He contends that the language regarding "drug paraphernalia" was mere "boilerplate" statutory language, and that the statute's catchall provision is so overbroad as to allow general rummaging through his property. He argues that the agents had "no direction on how to tell what items were drug paraphernalia and which were not." Appellants' Br. at 18.

■ The Fourth Amendment's requirement that a warrant particularly describe the things to be seized prevents a "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564 (1971), and " 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965) (quoting *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927));

see also *United States v. Medlin,* 842 F.2d 1194, 1199 (10th Cir.1988); *Voss v. Bergsgaard,* 774 F.2d 402, 404 (10th Cir.1985). "The particularity requirement [also] ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Id.* at 404. We review de novo the legal question of whether a warrant is overbroad. *Wicks,* 995 F.2d at 973; *United States v. Harris,* 903 F.2d 770, 774 (10th Cir.1990); *United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988). The test applied to the description of the items to be seized is a practical one. *Id.* "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wolfenbarger,* 696 F.2d 750, 752 (10th Cir.1982).

■ The warrant in this case described drug paraphernalia in terms of subsection (d) of the Drug Paraphernalia Act. Subsection (d), which was reproduced as attachment number two to the warrant, defines drug paraphernalia extensively and includes a thorough list of various types of drug paraphernalia. *See* 21 U.S.C. § 863(d). Moreover, although subsection (d) does contain a catchall provision which includes among drug paraphernalia "any and all other equipment ... primarily intended for or designed for use in ... producing ... ingesting ... or otherwise introducing a controlled substance into the human body," the provision is sufficiently limited by the language "primarily intended for" and "designed for use." *Id.*

We have previously stated that "[a] warrant describing 'items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit.'" *Wicks,* 995 F.2d at 973 (quoting *Harris,* 903 F.2d at 775). Moreover, where the subject of the search is related to the illegal drug business, we have repeatedly upheld search warrants cast in comparably broad terms. *See id.* (listing cases). "'When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking.'" *United States v. Emmons,* 24 F.3d 1210, 1216 (10th Cir.1994) (quoting *Harris,* 903 F.2d at 775). The type of criminal activity under investigation in the present case—a drug paraphernalia business—makes it difficult to list with great particularity the precise items desired to be seized which evidence such activity. Consequently, we conclude that the warrant in question, although describing the paraphernalia in statutory terms, was sufficiently particular under these circumstances. It was limited to materials related to the use of illegal drugs, and to documents and other items that went to that intended use. The district court therefore correctly denied Janus's motion to suppress evidence seized pursuant to the warrant.

## II. Motion to Suppress: Marijuana

Janus contends that the district court erred in refusing to grant his motion to suppress the marijuana found during the search. Janus argues that the marijuana was outside the scope of the warrant and that the district court erroneously concluded that it was in "plain view."

■ The warrant did not authorize the agents to search for marijuana. However, where the government has a warrant to search a given area for specific objects, and in the course of the search come across some other article of incriminating character, the plain view doctrine may permit the government to seize the evidence without a warrant. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971) (plurality opinion). We note the caution, however, with which we must apply the plain view doctrine: "[I]t is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure." *Id.*

To justify a warrantless seizure based on plain view, therefore, we have held that three conditions must be satisfied. *United States v. Naugle,* 997 F.2d 819, 822 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). First, the seizing agent must not have violated the Fourth Amendment "'in arriving at the place from which

the evidence could be plainly viewed.'" *Id.* (quoting *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)). Second, "the item must not only be in plain sight, but its incriminating character must also be immediately apparent." *Id.* (quoting *Horton,* 496 U.S. at 136, 110 S.Ct. at 2308). Third, " 'not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.'" *Id.* (quoting *Horton,* 496 U.S. at 137, 110 S.Ct. at 2308).

■ We are satisfied that these elements have been met under the present circumstances, and thus the district court properly denied the motion to suppress. First, the district court found that the warrant permitted the agents to search the second floor and the bedroom area for drug paraphernalia and documents. R.Vol. 3 at 138–39. Additionally, the court found that the drawer containing the marijuana was a drawer where documents could have been located, and in fact, documents had been found in the bedroom. *Id.* at 139. These findings can hardly be considered clearly erroneous. *Naugle,* 997 F.2d at 822 (" 'A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.'" (quoting *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982))). Second, the incriminating nature of the evidence was immediately apparent to Agent Burke who testified that he recognized the plants to be marijuana as soon as he opened the drawer. R.Vol. 5 at 204. Third, Agent Burke had a lawful right of access to the marijuana. The marijuana was in a drawer where Agent Burke was permitted to look, and he did nothing more than open the drawer.

### III. Drug Paraphernalia Act

■ Janus next asserts that the current drug paraphernalia statute violates the Tenth Amendment because it does not contain an interstate commerce element [2] and lacks specific congressional findings "that the sales of drug paraphernalia affect interstate commerce." R.Supp. Vol. 1, Doc. 2. We review de novo the issue of whether § 863 represents a legitimate exercise of congressional authority. *Johnston v. Cigna Corp.,* 14 F.3d 486, 489 (10th Cir.1993); *United States v. Murphy,* 977 F.2d 503, 504 (10th Cir.1992).

■ Article I, section 8, clause 3 of the Constitution confers upon Congress the power "[t]o regulate Commerce . . . among the several states" and clause 18 of the same article grants Congress the power "[t]o make all laws which shall be necessary and proper for the carrying into execution the foregoing powers." Under its extensive commerce power, Congress may regulate purely intrastate activities that affect interstate commerce, *Fry v. United States,* 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363 (1975) ("Even activity that is purely intrastate in character may be regulated by Congress, where the activity affects commerce among the States or with foreign nations."), and need not require proof of a nexus between the activity and interstate commerce. *See, e.g., Perez v. United States,* 402 U.S. 146, 153, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686 (1971) (upholding 18 U.S.C. §§ 891–894, which prohibit extortionate credit transactions but do not expressly require proof of an interstate commerce nexus); *see also United States v. Lane,* 883 F.2d 1484, 1492 (10th Cir.1989) (upholding 18 U.S.C. § 245(b)(2)(C), which prohibits interference with applications for or enjoyment of private employment because of race, color, religion, or national origin but does not expressly require proof of an interstate commerce requirement), *cert. denied,* 493 U.S. 1059, 110 S.Ct. 872, 107 L.Ed.2d 956 (1990). Janus apparently concedes this, but argues that § 863 is unconstitutional because the legislative history for the specific statute does not contain any explicit or implicit congressional findings that sales of drug paraphernalia af-

---

**2.** 21 U.S.C. § 863(a)(1) provides: "It shall be unlawful for any person—(1) to sell or offer for sale drug paraphernalia."

fect interstate commerce. R.Supp. Vol. 1, Doc. 2.

■ Janus's argument is foreclosed by prior case law in which we have repeatedly concluded that "the absence of formal findings concerning the effect on interstate commerce ... does not prevent Congress from regulating under the Commerce Clause." *Morgan v. Secretary of Housing & Urban Dev.*, 985 F.2d 1451, 1455 (10th Cir.1993); *Lane*, 883 F.2d at 1492 ("Congress is not required to make 'particularized findings in order to legislate.'" (quoting *Perez*, 402 U.S. at 156, 91 S.Ct. at 1362)). And our holdings in *Morgan, Lane,* and the case at bar are entirely consistent with the Supreme Court's Commerce Clause jurisprudence. *See, e.g., Perez*, 402 U.S. at 156, 91 S.Ct. at 1362 (providing Congress need not make particularized findings in order to legislate); *Katzenbach v. McClung*, 379 U.S. 294, 299, 85 S.Ct. 377, 381, 13 L.Ed.2d 290 (1964) (same); *see also Fullilove v. Klutznick*, 448 U.S. 448, 503, 100 S.Ct. 2758, 2787, 65 L.Ed.2d 902 (1980) (Powell, J., concurring) ("After Congress has legislated repeatedly in an area of national concern, its Members gain experience that may reduce the need for fresh hearings or prolonged debate when Congress again considers action in that area.").

Additionally, the Supreme Court has emphasized that "[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class." *Perez*, 402 U.S. at 154, 91 S.Ct. at 1361–62 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 193, 88 S.Ct. 2017, 2022, 20 L.Ed.2d 1020 (1968)); *see also United States v. Smaldone*, 485 F.2d 1333, 1342 (10th Cir.1973) ("[A]ctivities within a regulated class of activities which do not exceed the reach of federal power under the Commerce Clause need not be shown, in each individual case, to affect interstate commerce."), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974). Regarding the case at bar, Congress frequently has relied upon the Commerce Clause as authority for the enactment of statutes regulating drug trafficking, *see, e.g.,* 21 U.S.C. § 801, and courts have consistently upheld congressional regulation of the class of intrastate drug activities. *See, e.g., United States v. Visman*, 919 F.2d 1390, 1393 (9th Cir.1990), *cert. denied*, 502 U.S. 969, 112 S.Ct. 442, 116 L.Ed.2d 460 (1991); *United States v. Montes–Zarate*, 552 F.2d 1330, 1331 (9th Cir.1977) (per curium), *cert. denied*, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). Therefore, because intrastate sales of drug paraphernalia are part of this properly regulated class, it follows that the drug paraphernalia statute is a proper exercise of Congressional power. *See Lane*, 883 F.2d at 1492 ("When Congress enacts a statute under its commerce power, it is not constitutionally obligated to require proof beyond a reasonable doubt that each individual act in the class of activities regulated had an effect on interstate commerce.").

Furthermore, the drug paraphernalia statute which Janus challenges is part of the Comprehensive Drug Abuse Prevention and Control Act of Title 21. In the legislative history of that act, Congress specifically found that "Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(6). We regard drug paraphernalia to be part and parcel of the "incidents of the traffic in controlled substances," and see no reason why Congress could not rely on that connection to support § 863. *Cf. Lane*, 883 F.2d at 1492 (concluding that although Congress had made no interstate commerce findings in 1988 when it enacted 18 U.S.C. § 245, it had heard extensive evidence on the burdens racial discrimination places on interstate commerce in connection with enacting the 1964 Civil Rights Act on which Congress could have relied); *see also United States v. Edwards*, 13 F.3d 291, 294 (9th Cir.1993) (suggesting Congress was not required to conduct additional hearings and make new findings regarding a specific statute which would merely repeat prior findings). Therefore, we conclude that Congress possessed power under the Commerce Clause to enact § 863 and that Congress validly invoked that power.

## IV. Joinder/Severance

Janus next contends that joinder of the marijuana count with the paraphernalia counts was improper under Fed.R.Crim.P. 8(a), or, alternatively, that the trial court abused its discretion in denying severance under Fed.R.Crim.P. 14.

A question of misjoinder under rule 8 is a question of law, subject to de novo review. *United States v. Hollis,* 971 F.2d 1441, 1456 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993); *United States v. Cardall,* 885 F.2d 656, 667 (10th Cir.1989). According to Rule 8(a) joinder of offenses is proper if the offenses are "of the same or similar character." *United States v. Holland,* 10 F.3d 696, 699 (10th Cir.1993), *cert. denied sub nom. Kelly v. United States,* —— U.S. ——, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994); *United States v. Sturmoski,* 971 F.2d 452, 460 (10th Cir.1992). And we have previously stated that Rule 8 "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Hopkinson,* 631 F.2d 665, 668 (10th Cir.1980), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981); *see United States v. Scott,* 659 F.2d 585, 588 (5th Cir. Unit B 1981) (providing rule governing joinder is to be broadly construed in favor of initial joinder), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 105 (1982); *Haggard v. United States,* 369 F.2d 968, 973 (8th Cir.1966) (stating broad interpretation of rule governing joinder is encouraged in the interest of more efficient administration of criminal trials), *cert. denied sub nom. Alley v. United States,* 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967). In the present case, Count 161, knowingly engaging in the manufacture of marijuana plants, is a drug offense in violation of the Drug Abuse Prevention and Control Act of Title 21. Counts 2 and 3, knowingly and intentionally selling and offering for sale drug paraphernalia, are also drug offenses in violation of the same comprehensive act. We conclude, therefore, that the joinder of Count 161 was proper under Rule 8(a) because it was an offense of the "same or similar character." *Cf. United States v. Fortenberry,* 919 F.2d 923, 925 (5th Cir.1990) (concluding that be-cause both charges were for weapons violations they were of the same or similar character within the meaning of the rule governing joinder of claims), *cert. denied,* 499 U.S. 930, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991).

However, even in the absence of a misjoinder under Rule 8(a), the court may order the separate trials of counts " '[i]f it appears that a defendant ... is prejudiced by a joinder of offenses.' " *United States v. Levine,* 983 F.2d 165, 167 (10th Cir.1992) (quoting Fed. R.Crim.P. 14). "In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *Hollis,* 971 F.2d at 1456; *Cardall,* 885 F.2d at 668. "The decision whether to grant or deny severance is within the sound discretion of the trial court, and will not be disturbed on appeal unless there is an affirmative showing of an abuse of discretion." *Id.* at 667. "The burden of the defendant to show an abuse of discretion in this context is a difficult one." *United States v. Valentine,* 706 F.2d 282, 290 (10th Cir.1983).

Before the district court, Janus attempted to justify the severing of counts because "no reasonable jury would be able to decide the drug paraphernalia counts alone when the marihuana count is tried along with it." Defs' Mot. for Severance, R.Vol. 1, Doc. 28. This rationale, however, does not mandate a severance. " 'Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the "spillover effect" ... is sufficient to warrant severance.' " *Levine,* 983 F.2d at 167 (quoting *United States v. Bailey,* 952 F.2d 363, 365 (10th Cir.1991)) (alteration in original). Moreover, as the district court found, had separate trials been granted, the evidence would likely have been admissible anyway under Fed.R.Evid. 404(b) as showing intent. *See Hollis,* 971 F.2d at 1457; *see also United States v. Rabbitt,* 583 F.2d 1014, 1022 (8th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). The charges against Janus mainly dealt with alleged drug paraphernalia. Consequently, Janus's intent was paramount. Janus claimed that his business was a legitimate,

non-drug business as far as he knew; therefore, the presence of a hidden garden and marijuana plants would be both relevant and material on other counts. Under these circumstances we conclude that the district court did not abuse its discretion in refusing to sever the counts.

## V. Prosecutorial Misconduct in Closing Argument

 Janus argues that certain remarks of the prosecutor during closing argument were so prejudicial as to deny him a fair trial. During the rebuttal phase of closing argument the prosecution said to the jury: "Make no mistake about the intent of Mr. Janus. Make no mistake. This [sic] items are evil from their conception and they were going to be used for an evil purpose." R.Vol. 8 at 985. Janus objected, requesting that the jury be instructed to disregard the "defamatory language about things being evil." *Id.* The district judge, in overruling the objection, stated: "It's a legitimate argument.... I think [the prosecution] is using [evil] interchangeably for the word illegal as I understand it." *Id.* On appeal Janus claims that the prosecution's comment was highly prejudicial and caused incurable damage.

We agree with the district court that the prosecutor's comment was not improper in context. The remark on its face was fair argument. Furthermore, the prosecutor's comment might be characterized as invited comment. In its closing argument, as well as throughout trial, defense counsel maintained that Janus was unaware the paraphernalia he was selling was illegal. *See, e.g.,* R.Vol. 8 at 966. The prosecution's comment on rebuttal, therefore, appears to have been an attempt to address one of the main factual issues in the case—that Janus knew he was selling drug paraphernalia. We have repeatedly recognized that considerable latitude is given the prosecutor in closing argument in replying to an argument raised by defense counsel's closing statement. *United States v. Es-*

*pinosa,* 771 F.2d 1382, 1401 (10th Cir.), *cert. denied sub nom. Foreman v. United States,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); *United States v. Dickey,* 736 F.2d 571, 596 (10th Cir.1984), *cert. denied sub nom. Beasley v. United States,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985).

Assuming arguendo that the comment was improper either intrinsically or as invited comment, it did not deprive Janus of a fair trial because it was harmless. The comment was singular and isolated. *See United States v. Pena,* 930 F.2d 1486, 1491 (10th Cir.1991); *United States v. Record,* 873 F.2d 1363, 1376 (10th Cir.1989). And the record consists of ample evidence, independent of the alleged misconduct, which supports the jury's verdict. The harmlessness was further bolstered by the trial court's instruction to the jury that statements and arguments by the attorneys were not evidence and were not to be considered in rendering a verdict. R. Vol. 8 at 924; *see Pena,* 930 F.2d at 1491.

## VI. Defendants' Jury Instructions

 Next, Janus asserts that the trial judge erred in refusing to give his tendered instruction No. 5 on his defense theory that "he believed that his conduct was authorized by Federal, State and local law." Appellants' Opening Br. at 43.

Janus's argument on this point suffers from the deficiency that he fails to cite where in the record the proper objection was made. *See* Fed.R.App.P. Tenth Cir.R. 28.2(d); *see also Jetcraft Corp. v. Flight Safety Int'l,* 16 F.3d 362, 366 (10th Cir.1993); *McGinnis v. Gustafson,* 978 F.2d 1199, 1201 (10th Cir. 1992); *Moore v. Subaru of Am.,* 891 F.2d 1445, 1448 (10th Cir.1989). The cited portion of the record does not contain any objection by the defendant or any court ruling; it contains only a brief discussion between defense counsel and the trial judge regarding the tendered instruction.[3] Furthermore, our independent review of the record reveals that the defendant in fact failed to preserve the issue for appeal. Although preliminary dis-

---

3. At the jury instruction conference the following exchange occurred:

 THE COURT: Instruction number 5 is the so-called patent defense. I do not intend to give that, Mr. Eldridge. I don't think that a patent is something you can hang your hat on.

 MR. ELDRIDGE: I think that also applies to the Customs importation, Judge.

 ....

 THE COURT: Well, I don't think that the mere fact that an article has cleared Customs or evidently has cleared Customs by virtue of a

cussions between the trial judge and counsel suggested that defendants' tendered instruction No. 5 might be included in the final instructions to the jury, *see* R.Vol. 8 at 901, the court apparently excluded this instruction in its final version. Despite this omission, and after the court had provided defense counsel with a copy of its jury instructions, defense counsel clearly stated that he had no objections.[4] Accordingly, we find defendant has waived this issue on appeal. Janus has not asked us to address this issue under the plain error standard, and we decline to do so sua sponte.

■■■ Alternatively, we conclude in any event that there was no error in failing to give the defendants' tendered instruction. When reviewing a claim of error relating to jury instructions, we review the instructions as a whole. *United States v. Haar*, 931 F.2d 1368, 1371 (10th Cir.1991). " 'Although a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions,' " *id.* (quoting *United States v. Pack*, 773 F.2d 261, 267 (10th Cir.1985)), and the court need not follow the exact language of a defense instruction "as long as the court's instructions correctly state the law and fairly and adequately cover the issues presented." *Pack*, 773 F.2d at 267; *United States v. Jenkins*, 701 F.2d 850, 858 (10th Cir.1983). Here we are satisfied that the charge as a whole adequately instructed the jury, taking defendant Janus's theory into account. The district court had, during trial, instructed the jury that while a patent was not a license, it

could be relevant as to Janus's intent. R.Vol. 5 at 365–66. And, the instructions given included a standard good faith instruction which noted that good faith was a complete defense, and the burden was on the Government to disprove it. R.Supp. Vol. II at 31–32.

## VII. Obstruction of Justice & Acceptance of Responsibility

■■■ Finally, Janus contends that the district court erred in enhancing his offense level by two for obstruction of justice pursuant to United States Sentencing Commission, *Guidelines Manual* § 3C1.1, and by failing to grant a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1. Once again, however, the defendants have failed to include and reference the portion of the record wherein their objections, properly preserving these issues for appeal, may be found. Because this is required by Tenth Circuit Rules 10.3.2(a) and 28.2(c), (d), we leave the district court's determination undisturbed. *See Jetcraft*, 16 F.3d at 366; *McGinnis*, 978 F.2d at 1201.

■■■ Assuming arguendo that these sentencing issues were properly presented, we would reach the same conclusion. With regards to the obstruction of justice issue, the guidelines require a two-point increase "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." USSG § 3C1.1. We review the district court's factual determinations as to the obstruction of justice under

---

stamp is a complete defense. We can consider that. Mr. Janus testified that he honestly thought that, and I suppose that's part of his good faith defense. So, I'll—I'll give it then, but I don't—I don't think the fact that an item has cleared Customs makes it or gives it an automatic exception.
R.Vol. 8 at 901.

4. During the afternoon session of the instruction conference the following exchanges occurred:
THE COURT: Call the jury in, please.
MR. ELDRIDGE: Excuse me, Your Honor. Before you do that, I've looked at all the instructions. I don't have any objection the way they are—
THE COURT: All right.
MR. ELDRIDGE: —with the exception of number 2.5 which appears on page 16. And I

just didn't know why you were going to give that one, the presumption of regularity.
. . . .
THE COURT: Would counsel approach the bench? Does government have any objections on instructions?
MS. TAFOYA: No, Your Honor.
THE COURT: Does the government have any objections to the instructions as read?
MS. TAFOYA: No.
THE COURT: Does the defendant have any objections to the instructions?
MR. ELDRIDGE: No.
THE COURT: Any objections to the instructions as read?
MR. ELDRIDGE: No.
R.Vol. 8 at 998–99.

the clearly erroneous standard, *Hollis*, 971 F.2d at 1460; *United States v. Urbanek*, 930 F.2d 1512, 1514 (10th Cir.1991), and we review de novo questions involving legal interpretations of the Sentencing Guidelines. *United States v. Gardiner*, 931 F.2d 33, 34 (10th Cir.1991); *United States v. Davis*, 912 F.2d 1210, 1211 (10th Cir.1990).

■ The district court gave two reasons for the enhancement. First, "[Janus] removed items of merchandise from the premises of his business after receiving information that other businesses had been raided" and, expecting an imminent raid on his premises, Janus "wished to conceal items of alleged paraphernalia which might be seized." R. Vol. 1, Doc. 46 at 2. Second, regarding the marijuana growing charge, "he uprooted plants from his indoor garden and attempted to conceal them in the bottom drawer of a dresser." *Id.* Based on our review of the record, we cannot conclude that these factual findings are clearly erroneous. Having made these findings, the district court correctly applied the guidelines. The guidelines commentary makes clear that the enhancement was intended to apply where a defendant engages in "destroying or concealing ... evidence that is material to an official investigation ... (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so." USSG § 3C1.1 Application note 3(d). This is precisely what the district court found to have happened here. Therefore, we find no error.

■ Regarding the argument that Janus was improperly denied a two point downward adjustment for his acceptance of responsibility, the guidelines provide that the offense level should be reduced "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1 The district court's determination of acceptance of responsibility is a question of fact that is reviewed under the clearly erroneous standard. *Hollis*, 971 F.2d at 1459; *United States v. Hernandez*, 967 F.2d 456, 459 (10th Cir.1992); *United States v. Whitehead*, 912 F.2d 448, 451 (10th Cir.1990). As such, the trial court's determination of whether Janus has accepted responsibility is subject to great deference on review and should not be disturbed unless it is without foundation. *United States v. Amos*, 984 F.2d 1067, 1071–72 (10th Cir.1993). Janus argues that this is an instance where a defendant who goes to trial nonetheless should receive an adjustment of acceptance of responsibility because he went to trial primarily to preserve an argument that the drug paraphernalia statute is unconstitutional. *See* USSG § 3E1.1, Application note 2. The district court judge, however, reached a contrary conclusion: "I do not believe [Mr. Janus] ... went to trial only to preserve the constitutional point. His statement at sentencing suggests a continued belief that he did nothing wrong and indicates that his main regret is the fact that he got caught." R.Vol. 1, Doc. 46 at 2. Having reviewed the record, we conclude that the denial of reduction for defendant's alleged acceptance of responsibility was not clearly erroneous.

The judgment of conviction and sentence imposed by the district court are AFFIRMED.