**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 22 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GERARDO OCHOA,

Defendant-Appellant.

No. 96-2147
(D.C. No. CR-95-353-04-JP)
(D. New Mexico)

ORDER AND JUDGMENT[*]

Before HENRY, LOGAN, and BRISCOE, Circuit Judges.

Defendant Gerardo Ochoa appeals following his conviction by a jury on cocaine trafficking charges. He contends that the district court erred in (1) refusing to grant immunity to codefendants who invoked their Fifth Amendment privilege to avoid testifying at his trial, (2) denying his motion to suppress evidence and (3) refusing to treat him as a minor participant for sentencing purposes.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This case developed when government narcotics agents received an informant's tip that Richard Orosco would soon be transporting a large amount of cocaine from Mexico into the United States. Government narcotics agents thus began surveilling Orosco's Las Cruces, New Mexico, residence. Over the next two days agents observed a van being moved into the garage, then driven out and replaced with a camper. Late on the third day the agents observed Orosco and Daniel Golay hook the camper to a Chevrolet Blazer and drive around briefly before returning to Orosco's residence. Within two hours the Blazer, still pulling the camper, left again. Several minutes later a Toyota pickup driven by defendant began following the Blazer as it traveled onto the interstate.

The agents followed the vehicles and observed the Blazer and pickup alternate as the front vehicle in the "lead-car" and "load-car" pattern frequently used by drug couriers. The vehicles stopped together at least three times over an approximate 200-mile route. Agents once observed defendant talking with those in the Blazer. The agents drove ahead where they met two other officers in Ruidoso and agreed to stop both vehicles.

When agents stopped the vehicles outside of Roswell defendant was in the pickup and Orosco, Golay, Edwina Coddington, and two others were in the Blazer. Coddington, who owned the Blazer and camper, consented to a search of the camper which revealed approximately 500 kilograms of cocaine. Coddington implicated Orosco, Golay and defendant. During questioning after the agents gave defendant his <u>Miranda</u> warnings defendant denied knowing the others or anything about what they were doing.

The agents prepared affidavits and obtained warrants to search the residences of those arrested, including defendant's home in Deming, New Mexico. The affidavits included background information about individuals associated with the Deming residence and their connection with drug trafficking and money laundering. The search of defendant's residence yielded records, documents, and other items corroborating his involvement in drug trafficking.

A grand jury charged defendant, along with four codefendants, with conspiracy to possess cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Defendant moved to suppress evidence seized from him, his truck and his residence. The district court denied the motion and the case proceeded to trial before a jury.

Orosco and Golay pleaded guilty. The government elected not to call either as a prosecution witness in defendant's trial, and when asked to testify for defendant each indicated he would invoke his Fifth Amendment privilege. Because they were awaiting sentencing, Golay and Orosco retained their Fifth Amendment privilege against self-incrimination.[1] United States v. De La Cruz, 996 F.2d 1307, 1312-13 (1st Cir. 1993); United States v. Bahadar, 954 F.2d 821, 824 (2d Cir. 1992); United States v. Hernandez,

---

[1] Golay's plea agreement provided for his cooperation if called as a prosecution witness. The district court had not accepted either plea agreement before defendant's trial, deferring the change of plea hearings until preparation of presentence reports. The government, thus, could withdraw the plea offer if Golay testified untruthfully.

962 F.2d 1152, 1161 (5th Cir. 1992). The district court refused to compel their testimony by granting immunity. Defendant's counsel made a record of the questions he would ask Golay, and indicated Golay would testify that defendant was not present when the vehicles left Las Cruces. Golay had made similar statements to the prosecution, but not under oath. Defense counsel offered an affidavit Orosco purportedly signed stating that defendant did not know about the cocaine and merely offered assistance when Orosco had difficulty with his Blazer. The jury convicted Ochoa as charged; he received a 324-month sentence.

I

Defendant contends that because he wanted to call Golay and Orosco as defense witnesses, the district court should have compelled the government to request immunity for them. This is an issue we review de novo. See United States v. Gabaldon, 91 F.3d 91, 93 (10th Cir. 1996) (district court decision on prosecutorial misconduct is mixed question of law and fact).

The executive branch alone has the authority to request an order compelling witness testimony in exchange for a grant of immunity from prosecution when a witness refuses to testify or to provide other information by invoking his Fifth Amendment privilege. 18 U.S.C. §§ 6002-03. The discretion to grant immunity rests with the government. See United States v. Doe, 465 U.S. 605, 616-17 (1984); Pillsbury Co. v. Conboy, 459 U.S. 248, 260-61 (1983); see also McGee v. Crist, 739 F.2d 505, 509 (10th

Cir. 1984) (district court lacks authority "to order immunity absent the application of the government"); United States v. Hunter, 672 F.2d 815, 818 (10th Cir. 1982) (rejecting Government of Virgin Islands v. Smith, 615 F.2d 964 (3d Cir. 1980), which held a court had authority to immunize a witness in limited circumstances after the prosecution refused to do so).

A defendant's Sixth Amendment right to present witnesses on his behalf does not allow displacing a witness' claim of privilege by forcing the prosecution to grant immunity except in extraordinary circumstances. See United States v. Bahadar, 954 F.2d 821, 826 (2d Cir.) (government should be required to grant immunity only when there is (1) discriminatory use by the government of immunity, (2) material, exculpatory and noncumulative witness testimony, and (3) the testimony is otherwise unobtainable), cert. denied, 506 U.S. 850 (1992). To hold otherwise would effectively impair the prosecutorial discretion involved in determining who should receive immunity and avoid prosecution. See United States v. Turkish, 623 F.2d 769, 774-76 (2d Cir. 1980), cert. denied, 449 U.S. 1077 (1981) (discussing balancing of competing interests, including general Fifth Amendment due process fairness accorded to defendants).

The record here does not reveal that the government coerced witnesses to invoke their Fifth Amendment privilege or that the government's refusal to grant immunity was "a deliberate attempt to distort the fact finding process." See United States v. Chalan, 812 F.2d 1302, 1310 (10th Cir. 1987) (quotation omitted). The government's statement

in court that it would not be bound by the plea agreement if Golay testified untruthfully merely restated the legal consequences embodied in the agreement. The record is somewhat unclear as to what Golay's testimony would be to aid defendant, but it would appear to address only whether defendant participated in accepting delivery or reloading the cocaine. This testimony, even if believed, would not have exonerated defendant and would not have materially challenged the testimony about defendant's scout or lead-car role and the evidence obtained at his residence. The same is true if Orosco simply denied defendant's knowledge of cocaine trafficking. Further, there was another woman, Rhonda Sieberlist, in the house and the Blazer who was not a codefendant nor apparently regarded as culpable whom defendant could, but did not, call to provide at least some of the evidence he sought to elicit from Golay and Orosco. The district court's refusal to compel the government to seek immunity for these witnesses did not violate defendant's Sixth Amendment right or "constitutionally protected fairness" at trial. Turkish, 623 F.2d at 777.

II

Defendant argues that the district court erred in failing to grant his motion to suppress evidence because the search warrant lacked particularity. We review de novo the legal question whether a search warrant is overly broad. United States v. Janus, 48 F.3d 1548, 1554 (10th Cir.), cert. denied, 116 S. Ct. 87 (1995).

The supporting affidavit, after describing the surveillance, arrest, Coddington's implication of defendant, and documents seized from defendant's pickup, asked for a search warrant for defendant's residence in the following language:

> The affiant knows based upon his training and experience that it is common for distributors of controlled substances typically to maintain documents such as telephone numbers of distributors and sources of supply for controlled substances, ledgers indicating distribution of controlled substances, and other items which tend to indicate the possession, use or distribution of controlled substances. It is also common for narcotics distributors to conceal the nature, source or location of assets, through fictitious names or straw owners. However, the affiant believes that it is common for the actual owner to maintain financial records or other documents indicating the transfer of narcotic proceeds.

Appellant's App. 9-10, Affidavit of Steven Woodson ¶ 10.

As the affidavit requested, the search warrant permitted a search of defendant's property for

> Proceeds from the sale of controlled substances, records, documents, ledgers, financial records, documents indicating the location of assets obtained with proceeds of controlled substances, telephone records, telephone numbers.

Id. at 3, att. D.

The district court found that "the type of criminal activity under investigation is a drug trafficking business--exactly the kind of business that, according to recent decisions by the Tenth Circuit, makes it difficult to specify the books and documents that evidence such activities." Id. at 26. It concluded that the affidavit and warrant were "as specific as circumstances would allow." Id. at 27. We agree with the analysis of the district court

and reject defendant's contention that the warrant authorizing the search of his residence was too broad or, alternatively, that the government agents executing that warrant lacked a good faith belief that it was valid.

The search warrant contained language limiting it to the crime of drug trafficking only, to seizure of proceeds from the sale of controlled substances, and to "documents indicating the location of assets obtained with [those proceeds.]" Id. at 26. The language was relatively broad, but when searching for evidence of drug trafficking we permit a more generic description of items to be seized. Janus, 48 F.3d at 1551, 1553-54; United States v. Emmons, 24 F.3d 1210, 1216 (10th Cir. 1994) (quoting United States v. Harris, 903 F.2d 770, 774 (10th Cir. 1990) ("[w]hen the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking")). The record also supports the officers' beliefs in the warrant's validity.

III

Finally defendant contends that the district court erred in refusing to sentence him as a minor participant under USSG § 3B1.2. Whether a defendant is a minor or minimal participant is a finding of fact that we review for clear error. United States v. Rangel-Arreola, 991 F.2d 1519, 1524 (10th Cir. 1993).

The record supports the district court's refusal to adjust defendant's offense level. Defendant used his own truck as a scout vehicle, see United States v. Calderon-Porras, 911

F.2d 421, 423 (10th Cir. 1990); the delivery involved a large amount of contraband, see United States v. Donaldson, 915 F.2d 612, 615 (10th Cir. 1990); and defendant had a pager and other evidence linking him to the Mexican cocaine source to whom he reported the progress of the delivery.  See United States v. Arredondo-Santos, 911 F.2d 424, 426 (10th Cir. 1990) (couriers are indispensable to success of drug trafficking operation); Donaldson, 915 F.2d at 615 (court considers defendant's culpability compared with other participants, "not status or position").

AFFIRMED.

Entered for the Court

James K. Logan
Circuit Judge