**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 20 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ERENIO CARRANCO PEREZ,

      Defendant-Appellant.

No. 96-1216
(District of Colorado)
(D.C. No. 95-CR-19-S)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **LUCERO,** and **MURPHY**, Circuit Judges.


      Defendant Erenio C. Perez was found guilty of various drug trafficking and firearm charges. He appeals his convictions, arguing the district court erred in denying his motion to suppress evidence seized pursuant to four search warrants. This court affirms.

---

      [*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. BACKGROUND

In October 1994, the Colorado Springs Police Department began working with agents from the Drug Enforcement Administration (DEA) after receiving information from a confidential informant that several individuals, including an individual later identified as Defendant, were members of a methamphetamine and ephedrine trafficking organization in Colorado Springs.  On November 20, 1994, at the direction of officers, the informant and another individual made a controlled buy of methamphetamine from Defendant.

On December 31, 1994, a detective from the Sheriff's Department in Fremont County, Colorado, came upon a large U-haul truck stuck in a ditch.  The truck contained approximately twenty-one barrels of ephedrine, a precursor chemical used to manufacture methamphetamine.  The driver of the truck, Ricardo Perez, was arrested and interviewed by DEA agents and Colorado Springs police.  Ricardo told the officers that he and his brother, Defendant, were involved in distributing methamphetamine in the Colorado Springs area.  Ricardo further told the officers about two properties, one located in Custer County and the other located in Fremont County, Colorado, where drugs and ephedrine were stored. The next day, January 1, 1995, the officers obtained search warrants for the properties and, with Ricardo's aid, executed the warrants.

During the search of the Custer property, officers found methamphetamine, other illicit drugs, ammunition, firearms, a bulletproof vest, and a vehicle with two hidden compartments. In an RV on the Custer property, officers found $84,000 in cash, firearms, and a triple beam scale. While searching the Fremont property, officers found numerous barrels of ephedrine, a firearm, and ammunition.

On the same day the search warrants for the Custer and Fremont properties were executed, Defendant was arrested by Colorado Springs police after leaving his residence at 5820 Del Rey Drive in a yellow International Scout with temporary license tags. The vehicle was impounded and a detective later obtained a search warrant for both the vehicle and the residence. During the search of the vehicle, officers found throwing stars, a night vision scope, a firearm, and $7000 in cash. In the residence, officers found an empty barrel with the name and address of the Chemins Company, $6580 in cash, and torn records regarding the purchase of the Custer property.

## II. MOTION TO SUPPRESS

Defendant raises several arguments under the Fourth Amendment to support his challenge of the district court's denial of his motion to suppress the evidence seized during the searches of the Custer property, the Fremont property, the

vehicle, and his residence.[1]  The Fourth Amendment provides that "no Warrants

shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be

seized."  U.S. Const. amend. IV.

On appeal from the denial of a motion to suppress, this court views the

evidence in the light most favorable to the government and accepts the district

court's factual findings unless clearly erroneous.  *See United States v.*

*Richardson*, 86 F.3d 1537, 1543 (10th Cir.), *cert. denied*, 117 S. Ct. 588 (1996).

The ultimate determination of the reasonableness of a search, however, is

reviewed de novo.  *See id.*

## A.    Probable Cause

---

[1]The government asserts, and the district court agreed, that Defendant does
not have standing to challenge the searches of the Custer and Fremont properties.
The Custer property was purchased in the names of Lourdes Aragon, Defendant's
girlfriend and codefendant; Estella Gonzales, Ricardo Perez's wife; and Jose
Reyes.  The Fremont property was purchased by Defendant and Ricardo Perez,
using their aliases.  In the Fourth Amendment context, the term "standing" is not
used in its "'traditional sense as a constitutionally- or prudentially-based
jurisdictional bar,'" but rather refers to whether a defendant has shown that his
own Fourth Amendment rights were violated by the challenged search and
seizure.  *United States v. Marchant*, 55 F.3d 509, 512 (10th Cir. 1995) (quoting
*United States v. Eylicio-Montoya*, 18 F.3d 845, 850 n.3 (10th Cir. 1994)).  This
court need not address the government's argument that Defendant has no standing
to challenge the searches because we find that, even assuming Defendant does
have standing, the search warrants were valid.  *See United States v. Scarborough*,
128 F.3d 1373, 1377 n.2 (10th Cir. 1997).

Defendant argues that none of the four search warrants were supported by probable cause. In determining the existence of probable cause, the issuing magistrate must decide whether, given the totality of the circumstances, "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Janus Indus.*, 48 F.3d 1548, 1552 (10th Cir. 1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). This court affords great deference to the magistrate's probable cause determination and will uphold that determination so long as the magistrate had a substantial basis for concluding that probable cause existed. *See id.* at 1553.

Defendant asserts the affidavits in support of the search warrants "are nothing but bare bones affidavits." Deputy Clinesmith from the Fremont County Sheriff's Office provided the affidavit in support of the search warrants for the Custer and Fremont properties. In his affidavit, Deputy Clinesmith stated that he arrested Ricardo Perez on December 31, 1994, after observing barrels of ephedrine in the truck Ricardo was driving, and was present when DEA agents interviewed Ricardo later that night. Deputy Clinesmith further stated Ricardo told the agents that he was taking the ephedrine to a ranch in Fremont County, where numerous other barrels were stored, and that various illicit drugs and assault weapons were stored on property located in Custer County. Deputy Clinesmith also testified that the DEA agents and an agent from the Bureau of

Alcohol, Tobacco, and Firearms (BATF) confirmed that Ricardo's statements were consistent with their investigations. Finally, Deputy Clinesmith stated that Ricardo had a criminal record for drug and firearm charges and that Ricardo was Defendant's brother.

With respect to the Scout and the residence, Detective Niski, a detective with the Metro Vice/Narcotics Unit of the Colorado Springs Police Department, provided the affidavit in support of the search warrants. In his affidavit, Detective Niski discussed at some length a controlled buy of methamphetamine from Defendant on November 20, 1994. During this controlled buy, Detective Niski observed a confidential informant and another individual meet with Defendant at a store parking lot, where methamphetamine was exchanged. Detective Niski stated that other detectives observed Defendant leave his residence in a GMC Jimmy and drive to the parking lot. Detective Niski also stated that he spoke with Ricardo Perez on December 31, 1994, after Ricardo was arrested. Ricardo told Detective Niski that he and his brother, Defendant, were involved in the distribution of methamphetamine in the Colorado Springs area; that Defendant had paid $200,000 for the barrels of ephedrine found in the U-haul truck; and that he had been at Defendant's residence approximately one week earlier and believed Defendant was in possession of drugs and cash. Detective Niski also stated in his affidavit that Defendant was arrested after he and another

individual left Defendant's residence in a yellow International Scout vehicle. Detective Niski further testified that the vehicle was impounded and that a drug-sniffing dog "alerted on both passenger doors and the rear bumper of the vehicle." He also stated that on January 1, 1995, an FBI agent arrested and interviewed an individual by the name of Valdamar Lansky, who stated that he supplied Defendant with ephedrine and made a delivery the night before. A Dial Number Recorder indicated that early in the morning on January 1, two calls were placed from Defendant's residence to Mr. Lansky's residence. Finally, Detective Niski stated that in his experience, drug dealers often keep weapons and cash on hand and use their personal vehicles to transport and store drugs, drug paraphernalia, and drug transaction records.

After carefully reviewing the affidavits, this court concludes the magistrate had a substantial basis for determining that probable cause existed to search the two properties, the vehicle, and Defendant's residence. Based on Ricardo's statements to the officers, which were corroborated by DEA and BATF investigations, the magistrate certainly had a substantial basis for concluding there was a "fair probability" that contraband would be found on the Custer and Fremont properties. In light of the police dog's reaction to the vehicle and Detective Niski's statements that drug dealers often store drug-related items in their vehicles, probable cause existed to search the vehicle. Although Defendant

argues that Detective Niski's statements "regarding his experience and training and his conjecture as to what drug dealers do" should not be taken into account in determining whether probable cause existed to search the vehicle and Defendant's residence, this court has consistently held that an agent's experience and training is entitled to consideration. *See, e.g.*, *United States v. Wicks*, 995 F.2d 964, 972 (10th Cir. 1993).

Probable cause also existed to search Defendant's residence. Less than two months before the search of his residence, Defendant was observed leaving the residence and driving to a store parking lot, where he sold methamphetamine to a confidential informant and another individual. A reasonable inference from this transaction is that Defendant stored methamphetamine at his residence. *Cf. United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986) (concluding, where defendant was seen leaving his residence with a firearm, that there was a reasonable probability he kept the firearm at his residence, and stating "[t]he magistrate was not required to rule out every other possible alternative"). Although Defendant suggests the information was stale, the passage of time between the controlled buy and the search is not fatal, as the affidavit indicates Defendant was involved in an "ongoing, continuous criminal activity." *Id.* Ricardo's statement to the officers that he had been at Defendant's residence one week before his arrest and that he believed Defendant was in possession of cash

and drugs further supports the existence of probable cause to search the residence. This court therefore concludes there was probable cause to support the four search warrants.

### B. Overbreadth of Warrants

Defendant also argues that all four warrants are facially overbroad because they fail to list the items to be seized with sufficient particularity. "The Fourth Amendment's requirement that a warrant particularly describe the things to be seized prevents a general, exploratory rummaging in a person's belongings . . . . As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Janus Indus.*, 48 F.3d at 1553 (internal quotations omitted). The description of items is "sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* at 1554. "Broad and generic terms of description may be valid when the terms are as specific as the circumstances and nature of the activity under investigation permit." *Richardson*, 86 F.3d at 1544 (internal quotations omitted). This court reviews de novo the legal question of whether a search warrant is overbroad. *See Janus Indus.*, 48 F.3d at 1554.

The search warrants for the Custer and Fremont properties provided that officers could search for and seize the following items:

> drug paraphernalia, records of ownership and occupancy, books, records, receipts, notes, ledgers, money, and other papers relating to

the transportation, ordering, sales and distribution of controlled substances, firearms, ammunition, receipts of sale of firearms, any and all controlled substance[s] to include methamphetamine, precursor[] chemicals for the manufacture of controlled substances and any equipment and glass[ware] used in the manufacture of controlled substances.

The search warrants for the vehicle and residence referenced Attachment B, which listed twelve categories of items that officers could search for and seize, including controlled substances, currency, records of drug transactions, weapons, financial records, computers used for keeping drug transaction records, precursor chemicals, and cooking utensils and glassware used in the manufacture of methamphetamine. This list is in conformity with Detective Niski's statements as to what drug traffickers typically keep in their homes and vehicles.

This court has "upheld search warrants cast in comparably broad terms, where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized." *Wicks*, 995 F.2d at 973 (collecting cases); *see also Richardson*, 86 F.3d at 1544; *Janus Indus.*, 48 F.3d at 1554. We therefore conclude the four search warrants were valid because they described the items to be seized with as much particularity as possible given the circumstances.[2]

---

[2]Relying on *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988), Defendant argues that the facial overbreadth of the search warrants was not cured by resort to the affidavits because the warrants did not incorporate the affidavits by reference and the affidavits were not attached to the warrants. In *Leary*, the

The judgment of the United States District Court for the District of

Colorado is **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge

---

court held that the particularity of an affidavit may cure an overbroad search warrant if the affidavit is physically connected to the warrant and the warrant expressly refers to the affidavit and incorporates it by reference. *See id.* at 603. Because this court concludes the search warrants were not overbroad on their face, we need not address this argument.

Defendant also appears to argue that in addition to disregarding the affidavits, this court should not consider Attachment B in evaluating the facial overbreadth of the search warrants for the vehicle and the residence because Attachment B was not physically attached to the warrants when the warrants were executed. Attachment B was physically attached to the warrants when Detective Niski applied for the warrants, and the warrants specifically referred to Attachment B. Although the record indicates Attachment B was no longer physically attached to the warrants at the time of execution, it is unclear whether Attachment B was available to the executing officers. Detective Niski, who applied for the warrants, was one of the officers who conducted the searches of the vehicle and residence. Defendant does not argue that the executing officers exceeded the scope of the items listed in Attachment B in conducting their searches and seizing items from the vehicle and the residence. Moreover, from the record it appears that Defendant was not present during either of the searches and thus could not have reviewed Attachment B prior to the officers conducting the searches. Under the circumstances, it is appropriate to consider Attachment B in determining whether the search warrants satisfy the particularity requirements of the Fourth Amendment.