**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSHUA PRICE, JR., also known as
Lil' June, also known as June, also
known as June Anderson,

Defendant-Appellant.

No. 99-7078

_____

Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 98-CR-10-S)

_____

Dennis A. Fries, Assistant United States Attorney, Eastern District of Oklahoma,
(Bruce Green, United States Attorney, Eastern District of Oklahoma, with him on
the briefs), Muskogee, Oklahoma, for Plaintiff/Appellee.

John M. Butler, Tulsa, Oklahoma, for Defendant/Appellant.

_____

Before **TACHA**, Chief Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**,
Circuit Judge.

_____

**MURPHY**, Circuit Judge.

_____

## I.  INTRODUCTION

Defendant-Appellant Joshua Price, Jr., appeals his various firearms, narcotics, and related convictions.  Jurisdiction to consider Defendant's appeal arises under 28 U.S.C. § 1291.  Because Defendant has not demonstrated reversible error, this court **affirms** his convictions.

## II.  FACTS AND PROCEDURAL HISTORY

On appeal this court views the evidence, and all reasonable inferences therefrom, in the light most favorable to the government.  *See United States v. Neal*, 718 F.2d 1505, 1506-07 (10th Cir. 1983).  In the summer of 1997, the Federal Bureau of Investigation ("FBI"), the United State's Marshall's Service, and the Muskogee Police Department were involved in a Task Force which investigated cocaine trafficking in the Muskogee, Oklahoma area.  During this investigation, Defendant was identified as a suspect in cocaine trafficking.  The Task Force gathered information on Defendant from informant Ebon Sekou Lurks.  Lurks then assisted the Task Force by making numerous controlled drug purchases from Defendant.

During this time, Lurks was going through a divorce.  Apparently angry that Lurks was awarded custody of their children, Lurks' wife informed Defendant that Lurks had been working as an informant for the FBI and that all of

the drug transactions between Defendant and Lurks had been taped. One week later, Lurks was murdered.

The police suspected that Defendant was involved in the murder, and obtained a search warrant for the residence at which Defendant was believed to be staying. Upon executing the search warrant, the police found Price, a gun belonging to Price, and Price's blood-stained tennis shoe. DNA testing indicated a very high probability that the blood on Price's tennis shoe was from Lurks.

Defendant was indicted in the United States District Court for the Eastern District of Oklahoma for one count of conspiracy to distribute cocaine, 21 U.S.C. §§ 846 and 841(a)(1), six counts of distributing cocaine, 21 U.S.C. § 841(a)(1), twelve counts of the use of a communication facility in committing a felony, 21 U.S.C. § 843(b), and two counts of "possess[ing] in or affecting commerce" a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C. § 922(g). Before trial, the prosecution filed a motion to admit the out of court statements made by Lurks to FBI agents before Lurks was murdered. The prosecution argued that Defendant had waived any hearsay or Confrontation Clause objections to the statements by murdering Lurks and thus procuring Lurks' unavailability as a witness. The district court held a hearing on this and other pretrial motions. After the hearing, the district court entered a written order granting the prosecution's motion to admit Lurks' out of

court statements. The order stated that the government had demonstrated by a preponderance of the evidence that Defendant had procured the unavailability of Lurks as a witness, and in so doing had waived his hearsay and Confrontation Clause objections to the out of court statements.

After a three day trial, the jury found Defendant guilty on all counts. Defendant was sentenced to the following terms of imprisonment: life for his conviction on one count of conspiracy to distribute cocaine; life for each of his six convictions for distributing cocaine; 48 months for each of his twelve convictions for the use of a communication facility in committing a felony; and 120 months for each of his two convictions for firearms possession. All the sentences were to run concurrently. Defendant has appealed his convictions and sentences to this court, advancing numerous arguments.

## III. DISCUSSION

### A. Motion to Suppress

Before trial Defendant filed a motion to suppress the evidence seized during the residence search, which included the blood-stained tennis shoe and the gun which was the basis of one of Defendant's firearms convictions. The motion was not supported by an accompanying brief, and the grounds for suppression were simply listed as follows:

> 1. The Affidavit upon which the search warrant issued was insufficient as a matter of law.

2. The issuing Judge incorrectly found probable cause for the issuance of the warrant in the Affidavit.

3. The Affidavit did not contain facts sufficient as a matter of law to establish probable cause.

4. The Search Warrant was invalid and improperly issued.

5. The Affidavit does not show or attempt to show any relationship between the premises and the objects seized.

Authority:

6. The search of the premises pursuant to the warrant and the issuance of the warrant violated the Defendant's rights under the Fourth Amendment to the United States Constitution and Rule 41 of the Federal Rules of Criminal Procedure.

7. Statements in the Affidavit relating to the premises in which the objects were found are mere conclusions based upon suspicions, with the grounds for suspicion left unstated.

The district court entered an order denying Defendant's motion to suppress, concluding that the search warrant was supported by probable cause and that, even if probable cause did not exist, exclusion of the evidence was not appropriate because the officers had acted in good faith in executing the warrant. *See generally United States v. Leon*, 468 U.S. 897 (1984). Unfortunately, Defendant's appellate briefing on this issue is as cursory as the motion to suppress filed in the district court. This court construes Defendant's appellate brief as making two suppression arguments: (1) the search warrant was not supported by probable cause, and (2) the search was invalid because of technical deficiencies in the warrant.

> We review de novo the district court's probable cause determination. Our review of the magistrate judge's issuance of a search warrant, however, is more deferential: Our duty is to ensure that the magistrate judge had a substantial basis for concluding that

> the affidavit in support of the warrant established probable cause. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] there is a fair probability that contraband or evidence of a crime will be found in a particular place.
>
> Because of the strong preference for searches conducted pursuant to a warrant, the Supreme Court has instructed us to pay great deference to a magistrate judge's determination of probable cause.

*United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (quotations and citations omitted).

The government argues that even if probable cause to issue the search warrant was lacking, the evidence obtained during the search of the residence should not be excluded because the police officers acted in good faith and reasonable reliance on the warrant. In *Leon*, the Supreme Court held that when police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause. *See Leon*, 468 U.S. at 913. If this court determines that the officers acted in good faith reliance on the search warrant, it does not need to reach the issue of whether probable cause existed for the warrant. *See United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993). There is a presumption that when an officer acts upon a search warrant the officer is acting in good faith. *See id.* at 1454.

The affidavit filed in support of the search warrant and the actual search warrant were sufficient to merit reasonable reliance by the police officers. The affidavit lists the items to be recovered, gives a detailed description of the address to be searched, briefly describes how Defendant had been identified as a suspect based on various interviews, and explains how some of the information given during these interviews had been verified. Similarly, the search warrant, although not a model of clarity, indicates the items to be searched for and the address at which the search is to take place. A police officer could reasonably rely on this search warrant. Defendant has produced no evidence indicating that the officers acted in bad faith or unreasonably relied on the warrant, and admitted as much during oral argument to this court. Because the *Leon* good faith rule applies, Defendant's probable cause argument is without merit.

Defendant also makes various technical challenges to the form of the search warrant. Because Defendant did not make these arguments to the district court, they are waived. *See United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991). This court thus reviews Defendant's argument only for plain error resulting in manifest injustice. *See United States v. Smith*, 131 F.3d 1392, 1397 (10th Cir. 1997). Under this standard, this court can correct an error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted). Even if Defendant is correct to note a

technical deficiency in the warrant, this deficiency could not affect the fairness, integrity, or public reputation of judicial proceedings.

**B. Hearsay and Confrontation Clause Objections**

Defendant appeals the district court's decision to admit the out of court statements of Lurks, claiming that these statements were hearsay and that his constitutional right to confront an adverse witness was violated. This court accepts the district court's conclusion that Defendant procured the absence of Lurks unless the conclusion was clearly erroneous. *See United States v. Little*, 60 F.3d 708, 713 (10th Cir. 1995) This court reviews *de novo* the district court's legal conclusions concerning the Federal Rules of Evidence and the Confrontation Clause. *See United States v. Torrez-Ortega*, 184 F.3d 1128, 1132 (10th Cir. 1999).

The district court found by a preponderance of the evidence that Defendant procured the unavailability of Lurks as a witness. The preponderance of the evidence standard was the correct standard for the district court to use. *See United States v. Cherry*, 217 F.3d 811, 820-21 (10th Cir. 2000). This finding was not clearly erroneous.

Much of Defendant's argument on appeal focuses on whether there was sufficient evidence linking Defendant to Lurks' murder besides the blood-stained tennis shoe found during the residence search. As noted above, however, this

court concludes that, even if problems existed in regard to the search warrant, exclusion of the evidence found during the search (the blood stained tennis shoe) is not appropriate because the officers acted reasonably and in good faith in executing the warrant. DNA testing indicated a very high probability that the blood on Price's tennis shoe was from Lurks. Defendant argues that police officers who investigated the Lurks murder scene might have had some blood on their shoes from the investigation, and that this blood was then transferred to Lurks shoe during the investigation. Defendant's argument, while possible, is unlikely, and does not demonstrate that the district court's conclusion was clearly erroneous. Viewing all the evidence in the record, this court determines that the district court's finding that Defendant more likely than not procured the absence of Lurks as a witness was not clearly erroneous.

Because Defendant procured the absence of Lurks, Defendant has waived his hearsay and Confrontation Clause objections. *See id.* at 820 ("A defendant may be deemed to have waived his or her Confrontation Clause rights (and, a fortiori, hearsay objections) if a preponderance of the evidence establishes he or she participated directly in planning or procuring the declarant's unavailability through wrongdoing."); *see also* Fed. R. Evid. 804(b)(6) (recognizing an exception to the hearsay exclusionary rule when the party against whom the statement is offered has engaged in wrongdoing which procures the unavailability

of the declarant). Thus, the decision of the district court to admit Lurks' out of court statements is affirmed.

## C. Chain of Custody

Defendant argues on appeal that "the Government never presented any witness that was able to validate the Chain of Custody from any of the Defendants to the officer that took the drugs into possession" and thus "moves this Honorable Court to dismiss all drug-related cases for lack of establishing a 'Chain of Custody.'" This court fails to comprehend Defendant's argument. To the extent that Defendant is making an authentication argument under Federal Rule of Evidence 901, the argument is off-target because the actual drugs recovered were never admitted into evidence. *See United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992) ("In this case we need not determine whether the drugs were properly authenticated since the government did not offer the drugs themselves into evidence."). In any event, the prosecution did establish an adequate chain of custody of the drugs from Defendant to the Oklahoma State Bureau of Investigation. Defendant's argument is rejected.

## D. Automobile Search

Defendant challenges his conviction under count twenty-one of the indictment for possession of a firearm in commerce after having been previously convicted of a crime punishable by a term of imprisonment exceeding one year.

The facts underlying this conviction arise from a traffic stop of Defendant. Defendant filed a motion to suppress the firearm seized as a result of the stop, which the district court denied. In reviewing the denial of a motion to suppress, this court accepts the factual findings of the district court unless clearly erroneous and views the evidence in the light most favorable to the government. *See United States v. Botero-Ospina*, 71 F.3d 783, 785 (10th Cir. 1995) (en banc). The district court's legal conclusions as to whether the stop complied with the Fourth Amendment are reviewed *de novo*. *See id*.

Viewing the evidence in the light most favorable to the government, the following facts gave rise to Defendant's conviction on count twenty-one. On the date in question, Defendant was driving ten miles per hour over the speed limit. Defendant was pulled over by a Muskogee County law enforcement officer. As the officer approached Price's vehicle, he saw and heard a "scanner," which was "picking up Muskogee County frequency." Defendant was removed from the vehicle and arrested for violating the following Oklahoma statute:

> It shall be unlawful for any person to operate a mobile radio capable of receiving transmissions made by any law enforcement agency for illegal purposes or while in the commission of a crime and not otherwise and any person violating the provisions hereof shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment in the State Penitentiary for not more than three (3) years, or fined by not more than Five Thousand Dollars ($5,000.00), or by both such imprisonment and fine.

Okla. Stat. tit. 21, § 1214. The officer then performed an inventory search of the vehicle. During this inventory, the officer found the firearm in question "between the seats there by the hump on kind of towards–more towards the driver on the driver's side of the hump."

The district court concluded that the search was valid both as a search incident to a lawful arrest and as an inventory search prior to towing. This court concludes that the recovery of the gun in the interior of the car was lawful as a search incident to a lawful arrest.

In *New York v. Belton*, a New York state policeman pulled over a speeding vehicle. *See* 453 U.S. 454, 455 (1981). As the policeman walked up to the vehicle and conversed with the occupants, he smelled marihuana and saw an item on the floor of the car associated with marihuana. *See id.* at 455-56. The officer removed the occupants from the vehicle and arrested them for possession of marihuana. *See id.* at 456. The officer then searched the interior of the vehicle; during this search he found cocaine. *See id.* On appeal to the Supreme Court, the defendant charged with possession of cocaine argued that the cocaine had been seized in violation of the Fourth and Fourteenth Amendments. *See id.* at 456-57. The Supreme Court held that when a police officer makes a lawful custodial arrest of the occupant of a vehicle, the interior of that vehicle may be contemporaneously searched. *See id.* at 460.

The incident involving Defendant's arrest is not distinguishable in any relevant manner from *Belton*. Defendant notes that the Muskogee County officer did not know that the scanner was in use when the officer pulled him over. In *Belton*, however, the officer was not aware of the marihuana possession, the offense for which the occupants were arrested, until the officer walked up to the car and conversed with the occupants. *See id.* at 455-56.

Defendant also argues that the search was invalid pursuant to the recent Supreme Court case of *Knowles v. Iowa*, 525 U.S. 113 (1998). In *Knowles*, the Court held that a search of an automobile conducted after a traffic stop resulting in a traffic citation violated the Fourth Amendment. *See* 525 U.S. at 114-17. Defendant, however, was not merely issued a citation in this case, he was arrested for violating the Oklahoma statute prohibiting the use of a scanner while committing a crime. Thus, *Belton* controls rather than *Knowles*. The decision of the district court denying Defendant's motion to suppress is affirmed.

**E. Joinder/Severance**

Defendant filed a motion in the district court challenging the joinder of his firearms charges with his drug charges and also arguing that, even if joinder was proper, the district court should have severed the firearms charges because of possible prejudice to Defendant. After a pretrial hearing, the district court denied Defendant's motion. Whether multiple offenses have been properly joined under

Rule 8(a) of the Federal Rules of Criminal Procedure is a question of law this court reviews *de novo*. *See United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995). The decision under Rule 14 of the Federal Rules of Criminal Procedure to grant or deny severance of claims properly joined under Rule 8(a) is reviewed for an abuse of discretion. *See id.*

Joinder of offenses under Rule 8(a) is appropriate if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Rule 8 is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *Janus*, 48 F.3d at 1557 (quotation omitted). This court has previously affirmed the joinder of firearms and narcotics offenses under the theory "that the firearms and the drugs were being used in pursuit of a common unlawful activity." *See United States v. Valentine*, 706 F.2d 282, 289 (10th Cir. 1983). There was testimony at the pretrial hearing concerning how Defendant's possession of firearms was related to his drug trafficking. Although *Valentine* can be distinguished from the present case because in *Valentine* the firearms and narcotics were discovered during the same search, that distinction is not relevant when there is specific testimony concerning the relationship of Defendant's firearms and narcotics violations. Joinder of the firearms and drug offenses was proper under Rule 8(a).

Defendant argues that even if joinder was proper under Rule 8(a), the drug and weapons offenses should have been severed under Rule 14. Defendant has the burden of showing real prejudice from the joinder of the two counts. *See United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993). "The burden of the defendant to show an abuse of discretion in this context is a difficult one." *Janus*, 48 F.3d at 1557 (quotation omitted).

The extent of Defendant's attempt on appeal to show prejudice is the following statement: "[The weapons and drug charges] were two isolated and separate offenses and distinct from all of the other charges, which resulted in prejudiced [sic] into the Defendant." This court has previously noted, however, that prejudice is more likely to occur when the offenses are of the exact same character. *See Muniz*, 1 F.3d at 1023. Defendant has not met his burden to identify prejudice from the joinder; the district court's refusal to sever the drug and firearms offenses is therefore affirmed.[1]

## F. Interstate Commerce Issues

---

[1] Defendant's appellate brief can also be construed to argue that the failure of the district court to sever the firearms and drug charges violated his due process rights. To the extent that Defendant does make this claim on appeal, and to the extent that this claim is different than Defendant's claim under Rule 14, it is waived because it was not presented to the district court. In any event, for those reasons set out above, we conclude that the joinder of the narcotics and firearms counts did not deny Defendant a fundamentally fair trial on any of the counts.

Defendant challenges the constitutionality of all three of the statutes under which he was convicted and also asserts that the government failed to meet its burden of proof with respect to the firearms charges. Constitutional challenges to a statute are reviewed *de novo*. *See United States v. Morris*, 247 F.3d 1080, 1085 (10th Cir. 2001). "[I]n reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Voss*, 82 F.3d 1521, 1524-25 (10th Cir.1996) (quotations omitted).

**1. Sufficiency of the Evidence**

Section 922(g) makes it a crime for a person convicted of a crime punishable by imprisonment for a term exceeding one year "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). There was testimony at trial that the two weapons found in the possession of Defendant were manufactured outside of Oklahoma. A reasonable jury could have found beyond a reasonable doubt that this testimony established the effect on interstate commerce

required for a conviction under § 922(g); Defendant's sufficiency of the evidence challenge is therefore rejected.

**2. Constitutional Challenges**

Defendant also challenges the constitutionality of all three statutes under which he was convicted, arguing that they exceed Congress' ability to regulate interstate commerce. The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558 (1995). First, Congress can regulate the use of the channels of interstate commerce. Second, Congress can regulate the instrumentalities of interstate commerce and persons or things in interstate commerce. Finally, Congress can regulate those activities that substantially affect interstate commerce. *See id.* at 558-59.

In *United States v. Wacker* this court rejected a constitutional challenge to § 841(a)(1) and § 846. *See* 72 F.3d 1453, 1475 & n.18 (10th Cir. 1996). In *Wacker* we noted that "the conduct regulated by [§ 841(a)(1) and § 846] clearly implicates interstate commerce, and Congress made explicit findings explaining the conduct's substantial and direct effect upon interstate commerce." *Id.* at 1475 (quotation omitted). Defendant argues that *Wacker* must be reexamined in light of the Supreme Court's recent decision in *United States v. Morrison*, 529 U.S. 598 (2000). In *Morrison*, the Supreme Court held that Congress did not have

power under the Commerce Clause to enact 42 U.S.C. § 13981, which provided a federal civil remedy for victims of gender-motivated violence. *See id.* at 601-02, 617-19. In both *Morrison* and *Lopez*, which involved a statute making it a federal crime to knowingly possess a firearm in a school zone, the Supreme Court struck down laws which criminalized non-economic behavior. *See id.* at 610-11 (discussing non-economic nature of the criminal statute struck down in *Lopez*); *id.* at 613 (discussing how gender-motivated violence is not an economic activity). In contrast, § 841(a)(1) makes it illegal to "manufacturer, distribute, or dispense, or possess with intent to manufacturer, distribute, or dispense a controlled substance." 21 U.S.C. § 841(a)(1).[2] These activities are, by their nature, economic in character. *See United States v. Meienberg*, No. 00-1390, 2001 WL 967841, at *3 (10th Cir. Aug. 27, 2001). Because *Morrison* involved the regulation of non-economic activities, while § 841(a)(1) deals with the regulation of economic activities, *Morrison* does not require a different conclusion than the one reached in *Wacker*. Thus, § 841(a)(1) and § 846 are within Congress' power to regulate interstate commerce.

---

[2]Section 846 makes it a crime to conspire to commit a violation of § 841(a)(1). *See* 21 U.S.C. § 846. As we did in *Wacker*, this court holds that if the underlying substantive provision is constitutional, a provision which criminalizes conspiracy to commit the underlying crime is also constitutional. *See United States v. Wacker*, 72 F.3d 1453, 1475 n.18 (10th Cir. 1996).

Section 843(b) makes it a crime to "knowingly or intentionally [] use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter." 21 U.S.C. § 843(b). When, as in this case, a defendant violates § 843(b) by using a communication facility to facilitate a violation of § 841(a)(1), the substantial affect on interstate commerce is obvious. As previously explained, violations of § 841(a)(1) substantially effect interstate commerce. *See Wacker*, 72 F.3d at 1475. Thus, the use of a communication facility in connection with a violation of § 841(a)(1) also substantially affects interstate commerce. *See United States v. Tisor*, 96 F.3d 370, 373-75 (9th Cir. 1996). Defendant's constitutional challenge to his convictions under § 843(b) is rejected.

Finally, this court has repeatedly affirmed the constitutionality of § 922(g). *See e.g. United States v. Dorris*, 236 F.3d 582, 584-86 (10th Cir. 2000); *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir. 1995). Thus, the constitutionality of § 922(g) is controlled by circuit precedent, and Defendant's argument is without merit.

**G. Apprendi Claims**

Defendant challenges the life sentences imposed for each violation of §§ 846 and 841(a)(1), arguing that these sentences run afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because this objection was not made in the district

court, this court reviews only for plain error. *See Jones v. United States*, 527 U.S. 373, 388 (1999). Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 389.

In *Apprendi* the Supreme Court held that any fact other than a prior conviction which increases the prescribed statutory maximum penalty must be submitted to a jury and proved beyond a reasonable doubt. *See* 530 U.S. at 490. In this case, the district court determined that the total amount of drugs involved in Defendant's convictions was over fifty grams of cocaine base, and that the statutory maximum term of imprisonment was, pursuant to 21 U.S.C. § 841(b)(1)(A), life. The district court also determined that the proper sentence under the United States Sentencing Guidelines ("Guidelines") was life imprisonment. The district court thus sentenced Defendant to life imprisonment for each violation of §§ 846 and 841(a)(1).

The quantity of drugs was not listed in the indictment nor submitted to the jury as a fact to be proved beyond a reasonable doubt. Thus, the life sentences imposed pursuant to § 841(b)(1)(A) were "error" that was "plain." *See United States v. Jones*, 235 F.3d 1231, 1236-37 (10th Cir. 2000). Defendant should have been sentenced under § 841(b)(1)(C), which provides for a maximum sentence of twenty years for each of Defendant's seven narcotics convictions.

-20-

The government, however, argues that Defendant's "substantial rights" were not affected. The government reasons that the district court, if it had properly sentenced Defendant under § 841(b)(1)(C), would have been required under § 5G1.2(d) of the Guidelines to impose the maximum sentence for Defendant's drug convictions and to run these sentences consecutively in order to approximate the life sentence required by the Guidelines. Section 5G1.2(d) of the Guidelines states:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

This court rejected a similar argument in *Jones*. In *Jones*, the government argued that the defendant suffered no prejudice from an *Apprendi* error because "the district court demonstrated its desire to impose a total sentence [beyond the statutory maximum] as recommended by the presentence report and could have achieved that result by imposing consecutive terms of ten and twenty years or partially concurrent twenty-year terms." 235 F.3d at 1238. This court rejected the argument, explaining that "[w]e will not permit our result to be guided by idle speculation as to the sentence that might be imposed by the district court on remand." *Id.*

The government's argument in this case, while similar, is different than the one advanced in *Jones* because the government here claims that § 5G1.2(d) is a mandatory provision that must be applied. A plethora of recent circuit court cases have addressed this issue, and most have concluded that application of § 5G1.2(d) is mandatory and thus renders moot any *Apprendi* error. *See United States v. Roberts*, 2001 WL 929847, at *3 (4th Cir. Aug. 16, 2001) (although *Apprendi* error was plain, the defendant's substantial rights were not affected because of the mandatory application of § 5G1.2(d));*United States v. Angle*, 254 F.3d 514, 518-19 (4th Cir. 2001) (same); *United States v. Sturgis*, 238 F.3d 956, 960-61 (8th Cir. 2001) (same); *United States v. Page*, 232 F.3d 536, 543-45 (6th Cir. 2000) (same); *United States v. Gallego*, 247 F.3d 1191, 1200 n.19 (11th Cir. 2001) (same (dicta)); *United States v. Kentz*, 251 F.3d 835, 842 (9th Cir. 2001) (any *Apprendi* error in district court's sentencing did not affect Defendant's substantial rights because of mandatory application of § 5G1.2(d)); *United States v. White*, 238 F.3d 537, 542-43 (4th Cir. 2001) (same); *see also United States v. Caldwell*, 255 F.3d 532, 533-34 (8th Cir. 2001) (reasoning that although *Apprendi* error was plain, the defendant's substantial rights were not affected because the district court could have applied § 5G1.2(d) and run the sentences consecutively); *United States v. White*, 240 F.3d 127, 135-36 (2nd Cir. 2001) (affirming the district court's use of § 5G1.2(d) to run sentences consecutively); *United States v.*

*Parolin*, 239 F.3d 922, 929-30 (7th Cir. 2001) (same). *But see United States v. Alvarez*, 254 F.3d 725, 728 (8th Cir. 2001) (remanding to the district court in light of *Apprendi* error for determination of whether to run sentences consecutively pursuant to § 5G1.2(d)); *United States v. Vasquez-Zamora*, 253 F.3d 211, 213-14 (5th Cir. 2001) (remanding to district court for resentencing in light of *Apprendi* error and suggesting that application of § 5G1.2(d) is discretionary rather than mandatory); *United States v. Bradford*, 246 F.3d 1107, 1113-15 (8th Cir. 2001) (stating that "pruden[ce]" requires remand to district court for resentencing in light of *Apprendi* error and noting the district court's "fairly broad discretion to impose either concurrent or consecutive sentences").

The conflict among the circuits is whether § 5G1.2(d) is a mandatory or discretionary provision; those courts holding that § 5G1.2(d) is mandatory have routinely concluded that an *Apprendi* error did not affect the defendant's substantial rights, while those courts holding that § 5G1.2(d) is discretionary have generally remanded to the district court for resentencing. *But see Caldwell*, 255 F.3d at 533-34 (reasoning that although *Apprendi* error was plain, the defendant's substantial rights were not affected because the district court could have applied § 5G1.2(d) and run the sentences consecutively). This court agrees with those circuits which have concluded that § 5G1.2(d) is a mandatory provision. Section 5G1.2(d) speaks in terms of "shall" rather than "may." Because § 5G1.2(d) is a

mandatory provision, there is no "idle speculation" as to the sentence the district court could impose upon remand. *Jones*, 235 F.3d at 1238. The district court would be required to impose twenty-year terms on Defendant's seven drug convictions and to run these sentences, as well as Defendant's sentences on the other convictions, consecutively, resulting in a total consecutive sentence of 208 years. Under these circumstances, the Defendant's substantial rights were not affected by the *Apprendi* error. Thus, Defendant has failed to demonstrate plain error and the district court's sentence is affirmed.

## IV.  CONCLUSION

For the reasons stated above, this court **AFFIRMS** Defendant's convictions and sentences.