**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSHUA MAGERS,

      Defendant-Appellant.

No. 03-4292
(District of Utah)
(D.C. No. 2:02-CR-352-01-TC)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **MURPHY**, and **McCONNELL**, Circuit Judges.

## I.    Introduction

Appellant, Joshua Magers, was charged in a four-count indictment with drug and firearms crimes. Magers filed a motion to suppress evidence seized during a roadside search of his vehicle and a subsequent search of his apartment. The district court denied the motion and the matter proceeded to trial. The jury convicted Magers of Counts I, III, and IV. He was sentenced by the district court

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to 110 months' imprisonment and five years' supervised release. Magers then brought this appeal challenging the denial of his suppression motion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the denial of Magers' motion to suppress.

## II.    Background

In January 2002, detectives with the West Valley City Police Department received information from two confidential informants that individuals were possibly manufacturing methamphetamine at an apartment located in West Valley City. Based on this information, the detectives decided to conduct surveillance at the apartment. They observed several people walk to and from the apartment and then drive away in two separate cars. The detectives divided into two groups and followed the two cars.

Detectives Crandall and Stokes began to follow a Ford Mustang driven by Magers. Shortly thereafter, they requested assistance from West Valley City police officer, Michael Fullwood. Officer Fullwood testified that he stopped Magers' vehicle after it failed to come to a complete stop before making a right turn at a red light. Fullwood further testified that as he approached Magers' vehicle, he observed two female passengers who were not wearing seat belts. Detective Crandall testified that he also noticed that the two female passengers

were not wearing seat belts. The failure to wear a seat belt is a secondary offense under Utah law. Utah Code Ann. § 41-6-182.

Officer Fullwood spoke to Magers while Crandall and Stokes spoke to the female passengers. Fullwood testified that Magers produced a valid driver's license and registration for the Mustang. He further testified that after a check revealed there were no outstanding warrants on Magers, he returned the documents to Magers and told him he was free to leave. Neither of the two female passengers, however, was able to produce identification. A check of their social security numbers and dates of birth revealed that one of the women, Stephanie Hymas, had two outstanding warrants for her arrest. The officers detained Hymas and asked if they could search her personal property. She consented. Her bags were removed from the Mustang, placed on the trunk, and searched. While the officers searched Hymas' bags, Magers remained in the vehicle and did not ask the officers to remove the bags.

Before their search of Hymas' bags was completed, the officers received a call from Detective Gray who had stopped the second vehicle. Gray told Detective Stokes that a search of that vehicle had led to the discovery of several blister packages of ephedrine, a substance used in the production of methamphetamine. When Stokes informed Gray that Magers was the driver of the Mustang, Gray told Stokes that he had recently arrested Magers for possession of

methamphetamine. The officers then called for a drug dog to inspect Magers' vehicle. After the dog indicated for drugs in the vehicle, it was searched and officers found approximately fifteen grams of methamphetamine. The officers arrested Magers.

While the officers searched Magers' vehicle, Detective Gray returned to the apartment and obtained consent to enter from the individual who answered the door. Detective Stokes, who was also at the apartment with Detective Gray, then received a call from Detective Crandall informing him that the officers had found methamphetamine in Magers' vehicle. Gray telephoned a Utah state judge who issued a telephonic search warrant for the apartment. Additional drugs and several firearms were found in the apartment.

## III.   Discussion

After Magers was indicted, he moved to suppress the evidence found in both the vehicle and the apartment. Magers first argued that Officer Fullwood lacked probable cause to believe he had committed a traffic violation because Utah law does not prohibit a motorist from making a right turn at a red light without stopping. *See* Utah Code Ann. § 41-6-24. The district court concluded, however, that the applicable statute made it clear that a motorist must make a complete stop before turning at a red light. The court also rejected Magers' argument that he was illegally detained beyond the scope of the initial traffic

stop.  Noting that Magers was not handcuffed or removed from his vehicle and that Officer Fullwood returned Magers' license and registration to him and told him he was free to leave, the court concluded that a reasonable person in Magers' position would have felt free to leave.  Thus, Magers was not seized under the Fourth Amendment.  *See United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996).  The district court considered, but rejected, Magers' argument that he did not believe he was free to leave because the officers had placed Hymas' belongings on the truck of his car.  The court noted that Magers never asked the officers to remove the bags from the top of the car.[1]

The court next rejected Magers' argument that the warrant to search the apartment was not supported by probable cause.  The court determined that Detective Gray communicated the following information to the state judge: (1) a reliable confidential informant had provided information that an individual named Josh had been manufacturing and distributing methamphetamine from the apartment; (2) a large amount of ephedrine had been found during the search of one of the cars seen leaving the apartment; (3) a drug dog had indicated the presence of drugs in a car driven by Magers; and (4) Magers was the tenant of the apartment.  The court concluded that this information was more than sufficient to

---

[1]Although Magers also argued before the district court that there was no probable cause to justify the search of his vehicle, he does not challenge the district court's ruling on that issue in this appeal.

-5-

establish probable cause to search the apartment. The district court then considered Magers' argument that the telephonic warrant was invalid because it did not comport with Utah law. Although the government conceded that one or more of the Utah statutory requirements were not met, the district court rejected Magers' argument. The court concluded that, in this case, the failure to comply with the statutory requirements had no bearing on the constitutionality of the search under the Fourth Amendment. *United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999) ("The Fourth Amendment is satisfied where, as here, officers obtain a warrant, grounded in probable cause and phrased with sufficient particularity, from a magistrate of the relevant jurisdiction authorizing them to search a particular location, even if those officers are acting outside their jurisdiction as defined by state law.").

This court reviews the denial of a motion to suppress, by viewing the evidence in the light most favorable to the government and accepting the district court's factual findings unless they are clearly erroneous. *United States v. Price*, 265 F.3d 1097, 1104 (10th Cir. 2001). The ultimate determination of whether a search or seizure was reasonable under the Fourth Amendment, however, is a question of law reviewed *de novo*. *Id.* Further, a search warrant and its supporting affidavit are presumed valid and a "magistrate's determination of

probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quotation omitted).

Having reviewed the record and considered the parties' arguments under the applicable standards, we conclude that the district court did not err when it denied Magers' motion to suppress. Accordingly, for substantially those reasons stated by the district court it its Order dated March 11, 2003, we **affirm** the judgment of the district court.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

*United States v. Magers*, No. 03-4292.
**McCONNELL**, J., concurring.

It is not obvious to me that Mr. Magers was "objectively" free to terminate the encounter with the police, as the majority holds. Maj. Op. 5. That he was not handcuffed, and was handed his documents and told he could leave, would not be conclusive if other aspects of the "totality of the circumstances" indicated that this was not so. *United States v. Manjarrez*, 348 F.3d 881, 885–86 (10th Cir. 2003). Here, two officers were questioning Mr. Magers's passengers and had placed one of the passenger's belongings on the trunk of his car in order to search them. While the officer dealing with Mr. Magers had returned his documents and told him he was free to leave, he could not do so without, at a minimum, asking officers to remove things from his car:

> Q: And your testimony was that Mr. Magers could just take off?
> A: He could have asked us, yes.

Transcript of Motion to Suppress, Testimony of Officer Fullwood at 66. A reasonable person might question whether he was free to leave if he had to ask the police to remove things from his car before he could actually do so.

And not all the officers shared Officer Fullwood's view of the degree of freedom Mr. Magers enjoyed. One of the officers conducting the search of the bags testified that Mr. Magers was not free to leave:

> Q: So basically, even though he had his credentials, he was detained, wasn't he?
> A: Yes, he was . . .
> Q: And we are still in agreement that the car could not leave?

A: This is correct . . .
Q: So if Mr. Magers, even though he had his driver's license,
he couldn't just take off because you were using the car?
A: Correct.

Transcript of Motion to Suppress, Testimony of Officer Crandall at 21–22. A flat statement by one of the officers that it was "correct" that the defendant "could not leave" is surely evidence that, "objectively," he could not leave. At a minimum, a reasonable person in Mr. Magers's position may well have shared that conviction.

Even if Mr. Magers, after requesting that the police remove the items from the trunk of his car, was technically free to abandon his friends by the side of the road without transportation, there is room to doubt whether he would have been permitted to take his car with him. As Officer Crandall explained, the police were "using" the car in connection with their search of the passengers. Mr. Magers may have been free to leave only to the extent that he was willing and able to abandon his car as well as his friends and hike off.

I do not think we need to resolve the issue of whether Mr. Magers was detained for purposes of the Fourth Amendment, because it is clear from the facts of the case (and Mr. Magers does not argue otherwise) that any constraint on Mr. Magers to remain with his vehicle and friends was a product of a legitimate investigation of Mr. Magers's passengers, for which the police had amply reasonable basis. Even if a legitimate detention of a vehicle's passengers—and perhaps of the vehicle as well—has the incidental effect of detaining the vehicle's

-2-

driver, that detention is best understood as resulting from the driver's attachment to his vehicle or his passengers rather than being a direct consequence of police activity. *See INS v. Delgado*, 466 U.S. 210, 218 (1984) (factory workers' inability to leave while INS agents asking them questions regarding immigration status due to voluntary obligation to employer rather than police activity); *Florida v. Bostick*, 501 U.S. 429, 436 (1991) (freedom of movement restricted by factor independent of police conduct—i.e., by being a passenger on a bus). That Mr. Magers abandoned neither car nor friends is ultimately attributable to his sense of his social responsibilities rather than to the activities of the police.

I therefore concur on the ground that, whether or not Mr. Magers was free to go in any technical sense, the constraints were the consequence of a legitimate detention of his passengers and therefore not a violation of his Fourth Amendment rights.