**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THANG T. HUYNH,

Defendant-Appellant.

No. 07-8021

(D. Wyoming)

(D.C. No. 06-CR-234-WFD)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this court has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Introduction

Defendant-Appellant, Thang T. Huynh, was charged in a one-count indictment with possession with intent to distribute methylenedioxymethamphetamine ("Ecstacy"), in violation of 21 U.S.C. §§ 841(a)(1).  Huynh filed a motion to suppress evidence seized during a roadside search of the vehicle in which he was traveling.  The district court denied the motion and Huynh entered a conditional guilty plea to the drug charge.  *See* Fed. R. Crim. P. 11(a)(2).  He was sentenced to eighty-two months' imprisonment and three years' supervised release.  Huynh then brought this appeal challenging the denial of his suppression motion.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the denial of Huynh's motion.

## II.    Background

On September 13, 2006, Benjamin Peech, a trooper with the Wyoming Highway Patrol, stopped a speeding vehicle traveling eastbound on I-80.  The vehicle was driven by Huynh.  When Peech asked for Huynh's license, proof of insurance, and registration, Huynh told him the car was a rental.  The female passenger, Thuy Truc Luu, handed the rental agreement to Peech.  Luu was listed as the renter of the vehicle but Huynh's name did not appear on the agreement as an authorized driver.

Peech asked Huynh to exit the vehicle and began questioning him.  Peech ascertained from the rental agreement that the vehicle had been driven

approximately 4200 miles in eleven days and the agreement's termination date had already passed. Huynh produced a California driver's license but told Peech that he and Luu had recently moved to Wisconsin. Huynh stated he had applied for work at a nail salon in Wisconsin. He also told Peech that Luu was his wife and she had rented the vehicle in Wisconsin so the two of them could drive to California and attend his uncle's memorial service. Peech testified that while he was questioning Huynh, Luu was fidgeting with something in the back seat of the rental car and looking back at the patrol car, turning her entire body around to observe Peech and Huynh.

Peech issued Huynh a warning and then questioned Luu. He testified she was extremely nervous during the questioning; her hands were shaking and she would not maintain eye contact with him. Luu told Peech that Huynh was her boyfriend and the two had traveled from Milwaukee to California where they had stayed for approximately a week.

Peech returned to his patrol car and told Huynh he was free to go. As Huynh walked toward the rental car, Peech asked him if he would answer a few more questions. Huynh agreed and repeated his earlier story about the reason for the trip from Wisconsin to California. He also admitted to Peech that Luu was his girlfriend, not his wife, and told Peech she was training to work in the nail salon with him. Peech testified that he believed the stories told by Huynh and Luu were inconsistent so he decided to re-contact Luu.

Luu told Peech she and Huynh had moved to Milwaukee to help her father relocate his semiconductor business. She indicated Huynh was working in the business with her and specifically told Peech that they had no other jobs in Milwaukee. Peech testified Luu told him the purpose of the trip was to visit family in California but she did not mention the funeral service for Huynh's uncle. She also stated she and Huynh had stopped in Salt Lake City. Peech testified Luu exhibited numerous nervous behaviors while she spoke to him and giggled nervously when she answered his questions.

Peech asked Luu for permission to search the vehicle and she refused to give her consent. Peech then took the keys from Luu, asked Luu and Huynh to exit the vehicle, and called for a drug detection dog. Approximately forty-five minutes after Luu refused consent to search the vehicle, Deputy Stevens of the Laramie County Sheriff's Office arrived with his canine. Stevens ran the dog around the exterior of the vehicle and it alerted to the left rear quarter panel. The officers searched the vehicle and found five plastic bags filled with approximately 5000 pills which were later determined to be methylenedioxymethamphetamine ("MDMA" or "Ecstacy"). Huynh was arrested and charged with possession with intent to distribute methylenedioxymethamphetamine, in violation of 21 U.S.C. § 841(a)(1).

After the indictment was returned, Huynh filed a motion to suppress all evidence obtained as a result of the search of the vehicle. The district court

denied the suppression motion, concluding Huynh's continued detention was based on Peech's objectively reasonable suspicion that Huynh was engaged in criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Huynh pleaded guilty, preserving his right to appeal the denial of his motion. *See* Fed. R. Crim. P. 11(a)(2).

## III. Discussion

When reviewing the denial of a motion to suppress, this court views the evidence in the light most favorable to the Government and accepts the district court's factual findings unless they are clearly erroneous. *United States v. Price*, 265 F.3d 1097, 1104 (10th Cir. 2001). The ultimate determination of whether a traffic stop was reasonable under the Fourth Amendment is a question of law reviewed *de novo*. *Id*. "The defendant bears the burden of establishing a Fourth Amendment violation." *United States v. Patterson*, 472 F.3d 767, 775 (10th Cir. 2006).

Huynh does not challenge the lawfulness of the initial stop and the Government concedes the encounter between Peech and Huynh was no longer consensual after Peech took the car keys from Luu. Thus, the only question before this court is whether Peech had objectively reasonable and articulable suspicion of illegal activity sufficient to justify the continued detention. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998). "We assess reasonable suspicion in light of the totality of the circumstances." *United States v. Valles*,

292 F.3d 678, 680 (10th Cir. 2002). Individual factors can contribute to reasonable suspicion even if each factor "is not by itself proof of any illegal conduct and is quite consistent with innocent travel." *United States v. Sokolow*, 490 U.S. 1, 9 (1989).

The district court relied on the following facts to conclude Peech had an objectively reasonable suspicion that Huynh was engaged in illegal activity:

> (1) [Huynh] had a California driver's license but also gave Peech a Milwaukee address; (2) the rental vehicle had not been returned despite it being due back to the rental agency four days prior to the stop; (3) there was no address on the rental agreement and [Huynh] was not listed as an authorized driver; (4) [Huynh] stated that the passenger was his wife while Luu stated [Huynh] was her boyfriend; (5) Luu's extreme nervousness throughout the stop; and (6) [Huynh's] and Luu's inconsistent explanations regarding their trip to California and their plans upon returning to Milwaukee.

*See*, *e.g.*, *United States v. Karam*, 496 F.3d 1157, 1164-65 (10th Cir. 2007) ("confusion about details is often an indication that a story is being fabricated on the spot, and vague and evasive answers may be considered, in conjunction with other factors, as contributing to an officer's determination of reasonable suspicion") (quotations and citation omitted); *United States v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005) (holding unusual nervousness "may be considered as part of the totality of circumstances a reasonable law enforcement officer would analyze in investigating possible crimes"); *Hunnicutt*, 135 F.3d at 1349 (listing factors contributing to objectively reasonable suspicion as including "having no proof of ownership of the vehicle, having no proof of authority to operate the

vehicle, and inconsistent statements about destination"); *United States v. McRae*, 81 F.3d 1528, 1535 (10th Cir. 1996) ("contradictory travel plans can contribute to a reasonable suspicion of illegal activity").

On appeal, we must "determine whether the totality of the circumstances justify the detention." *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997) (quotations and citations omitted). "While reasonable suspicion may not be based on a 'mere hunch,' 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *Karam*, 496 F.3d at 1162 (quoting *Arvizu*, 534 U.S. at 274). Huynh does not challenge any of the district court's factual findings. He simply argues they do not establish reasonable articulable suspicion of illegal activity. We disagree. Under the totality of the circumstances based on the district court's findings, we conclude Peech had reasonable suspicion to detain Huynh pending the arrival of the drug detection dog. Consequently, the court did not err when it denied Huynh's motion to suppress.

## IV. Conclusion

The order of the district court denying Huynh's motion to suppress is

**affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge