FILED
United States Court of Appeals
Tenth Circuit

July 2, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSHUA PRICE, JR.,

     Defendant - Appellant.

No. 12-7004
(D.C. No. 6:98-CR-00010-RAW-1)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

Joshua Price, Jr., a federal prisoner proceeding pro se,[1] challenges the district

court's refusal to modify his sentence under 18 U.S.C. § 3582(c)(2), based on

---

[*]After examining Appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]Because Mr. Price is proceeding pro se, we construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe a [pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

Amendment 750, which lowered the U.S. Sentencing Guidelines ("Guidelines") range for offenses involving certain levels of cocaine base. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

In the summer of 1997, a task force comprised of the Federal Bureau of Investigation, the U.S. Marshal's Service, and the Muskogee Police Department was investigating cocaine trafficking in the Muskogee, Oklahoma area. The task force worked with an informant—Ebon Sekou Lurks—to gather information about Mr. Price, an alleged drug dealer. Mr. Lurks made numerous controlled drug purchases from Mr. Price.

While he was acting as an informant for the task force, Mr. Lurks was going through a divorce. Apparently angry about issues related to the divorce, Mr. Lurks's wife told Mr. Price that Mr. Lurks had been working as an informant with the FBI and that Mr. Lurks had recorded all of his drug transactions with Mr. Price. One week later, Mr. Lurks was murdered.

Suspecting that Mr. Price was involved in Mr. Lurks's murder, police obtained a search warrant for Mr. Price's residence. When they executed the warrant, the police found Mr. Price, a gun belonging to Mr. Price, and Mr. Price's blood-stained tennis shoes. DNA testing indicated there was a very high probability that the blood on Mr. Price's tennis shoes belonged to Mr. Lurks.

In 1998, Mr. Price was charged with 21 counts of drug and firearm-related crimes.

The indictment included: (1) one count of drug conspiracy in violation of 21 U.S.C. § 846, (2) three counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, (3) three counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), (4) 12 counts of use of a communication facility to facilitate a felony (distribution of cocaine) in violation of 21 U.S.C. § 843 and 18 U.S.C. § 2, and (5) two counts of possession of a firearm after a conviction of a felony in violation of 18 U.S.C. § 922(g). He was not charged with the murder of Mr. Lurks.

Before trial, the Government moved to admit out-of-court statements that Mr. Lurks made to FBI agents before he was murdered. The Government argued that Mr. Price waived any hearsay or Confrontation Clause objections to admission of these statements because he murdered Mr. Lurks, thereby ensuring his unavailability as a witness. After a hearing, the district court granted the Government's motion to admit Mr. Lurks's statements. It explained that "[Mr.] Price . . . [was] directly involved in the execution of . . . [Mr.] Lurks," ROA, Vol. 1, pt. 3, at 465, and that "[c]lear and convincing evidence" indicated as much, *id.* at 467. It thus held that "the statements made by [Mr.] Lurks should be admitted into evidence as [Mr. Price] [has] waived [his] confrontation rights by causing the unavailability of [Mr.] Lurks." *Id.* at 469.

A jury convicted Mr. Price on all counts. The Government prepared a Presentence Report ("PSR") in anticipation of sentencing. The PSR grouped Mr. Price's convictions into two categories—the drug offenses ("Group 1") and the firearm offenses ("Group 2"). It calculated an offense level for each group and an offense level for a cross reference to

-3-

first degree murder.

For the Group 1 offenses, the PSR used the base offense level of 34 because the total quantity of cocaine involved in the offenses was between 150 and 500 grams. *See* U.S.S.G. § 2D1.1(c)(3) (1998). It then added two levels for possession of a firearm, *see id.* § 2D1.1(b)(1), four levels for his role in the offense, *see id.* § 3B1.1(a), and two levels for obstruction of justice by procuring the absence of a witness (Mr. Lurks), *see id.* § 3C1.1. The resulting adjusted offense level for the Group 1 offenses was 42.

For the Group 2 offenses, the PSR used the base offense level of 20 because Mr. Price had a prior felony conviction for a crime of violence. *See id.* § 2K2.1(a)(4)(A). It then added two levels because the firearms were stolen. *See id.* § 2K2.1(b)(4). The resulting adjusted offense level for the Group 2 offenses was 22.

Combining the Group 1 and Group 2 offense levels, pursuant to section 3D1.4 of the Guidelines, the PSR arrived at a combined offense level of 42.

The PSR then included a cross reference to first-degree murder under section 2D1.1 of the Guidelines. The then-applicable version of section 2D1.1(d)(1) stated that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." In calculating the offense level for the first-degree murder cross reference, the PSR used the base level of 43 mandated by section 2A1.1 of the Guidelines. It then added three levels because the victim was working for the government. *See id.* § 3A1.2(a). The resulting adjusted

offense level for the cross reference was 46.

The PSR thus calculated Mr. Price's total offense level to be 46. It determined his criminal history category to be II. Based on these calculations, the PSR recommended a sentence of life in prison.

Mr. Price made numerous objections to the PSR, including an objection to the calculation of the total amount of cocaine base attributable to him. Mr. Price contended that he should not have been liable for 84.6 grams of the cocaine base, which would have decreased the total quantity of cocaine base attributable to him to approximately 120 grams, and would have led to a lower base offense level for his Group 1 drug offenses. Mr. Price also objected to the two-level increase for obstruction of justice based on procuring the unavailability of Mr. Lurks. Mr. Price did not object to the cross reference to first degree murder or the recommended sentence of life in prison.[2]

The district court rejected all Mr. Price's objections. It explained that "even if I had agreed with the defendant on [the objections], . . . the sentence would have to be the same. I have no authority to sentence other than . . . a mandatory life sentence." ROA,

_____

[2]Mr. Price filed a 28 U.S.C. § 2255 petition, which the district court denied. In seeking a certificate of appealability, Mr. Price argued that *Blakely v. Washington*, 542 U.S. 296 (2004), required us to vacate his sentence because the district court's application of the first-degree murder cross reference was inappropriate in that the jury never found that he killed Mr. Lurks. *United States v. Price*, 118 F.App'x 465, 471 (10th Cir. 2004) (unpublished). We rejected this argument because *Blakely* does not apply retroactively to cases on collateral review. *Id.*; *see also United State v. Price*, 400 F.3d 844, 845 (10th Cir. 2005) (denying Mr. Price's motion for reconsideration and rehearing which he submitted after *United States v. Booker*, 543 U.S. 220 (2005), was decided).

Vol. 2, pt. 7, at 1454. The district court then sentenced Mr. Price to life in prison for the one count of conspiracy and each of the six counts of distributing cocaine, 48 months in prison for each of the 12 counts of use of a communication facility to facilitate a felony, and 120 months in prison for both of his firearm possession offenses. The sentences were to run concurrently.

Mr. Price appealed his convictions and sentence on numerous grounds, all of which we denied in *United States v. Price*, 265 F.3d 1097 (10th Cir. 2001). After filing numerous post-conviction motions and appeals, in September 2008, Mr. Price filed a motion to modify his sentence based on Amendment 706 to the Guidelines. Amendment 706 increased the amount of cocaine base necessary to trigger certain base offense levels. *See* U.S.S.G. app. C, amend. 706. Specifically, had Amendment 706 been in place when Mr. Price was sentenced, his base offense level for the Group 1 drug offenses would have been 32 rather than 34. *See id.*

The district court denied his motion to modify his sentence on July 28, 2009. It explained that Amendment 706 and its change to the Guidelines' drug quantity tables did not affect Mr. Price's Guidelines computations because his "total offense level was determined through the application of U.S.S.G. § 2A1.1" and "[t]he guideline computations resulting from the application of U.S.S.G. § 2A1.1 are not affected by the reduction in the guidelines for cases involving cocaine base." ROA, Vol. 1, pt. 3, at 622. Mr. Price filed a timely notice of appeal, but failed to file an opening brief. Therefore, we dismissed his appeal for failure to prosecute.

Mr. Price filed another motion to modify his sentence on December 2, 2011, this time relying on Amendment 748. Amendment 748 increased the quantity of cocaine base necessary to trigger a particular offense level. *See* U.S.S.G. app. C, amend. 748. Amendment 748 was a temporary emergency amendment but was repromulgated as Amendment 750. *See id.* amend. 750. If Amendment 748 or Amendment 750 were in place at the time that Mr. Price was sentenced, his base offense level for the Group 1 drug offenses would have been 30 rather than 34. *See id.* amend. 748; *id.* amend. 750.

The district court denied Mr. Price's motion for the same reason it denied his previous motion. It reiterated that Mr. Price's "original guideline imprisonment range was <u>not</u> calculated based on the quantity of cocaine base involved in his case, as the Court found that the [first-degree murder] cross reference . . . was applicable in this case. This finding resulted in the calculation of the defendant's guideline imprisonment range based on the provisions of U.S.S.G. § 2A1.1 for Murder in the First Degree." ROA, Vol. 1, pt. 3, at 673. It then concluded that "[t]he guideline computations resulting from the application of U.S.S.G. § 2A1.1 are not affected by Amendment 750; therefore, [Mr. Price] is not entitled to a reduction in his sentence based on Amendment 750." *Id.*

Mr. Price filed a timely notice of appeal and now challenges the district court's denial of his motion to modify his sentence based on Amendment 750.

## II.     DISCUSSION

"We review for an abuse of discretion a district court's decision to deny a reduction of sentence under 18 U.S.C. § 3582(c)(2)." *United States v. Osborn*, 679 F.3d

1193, 1195 (10th Cir. 2012).

A district court may modify a defendant's sentence if the defendant was "sentenced to a term of imprisonment based on a sentencing range that had subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). The district court may reduce a defendant's sentence if, after considering the applicable factors in 18 U.S.C. § 3553(a), "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Under section 1B1.10(a)(2)(B) of the Guidelines, a court is not authorized to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(2) if the amendment "does not have the effect of lowering the defendant's applicable guideline range."

Mr. Price first argues that the sentencing transcript indicates that the district court calculated his guidelines sentence based on a particular quantity of cocaine base. He points to a portion of the sentencing transcript where the district court stated: "I find by a preponderance of the evidence that the defendant's liability under the drug guideline should also include 84.6 grams of cocaine base seized by the Muskogee Police Department on March the 11, 1997." ROA, Vol. 2, pt. 7, at 1450.

But the district court made this statement in response to Mr. Price's objection to the quantity of cocaine base that was attributable to him. The district court explained that, even if it had sustained all of Mr. Price's objections, including those related to the quantity of cocaine base, "the sentence would have to be the same" because "it's a mandatory life sentence." *Id.*, at 1454.

-8-

The Guidelines range for an offense level of 42 (Mr. Price's combined offense level for Group 1 and Group 2) and a criminal history category of II is 360 months to life in prison. The Guidelines recommend a sentence of life in prison for any offense level over 43. Because the district court explained that it was a "mandatory life sentence," *id.*, it necessarily relied on the first-degree murder cross reference, which took the offense level to 46, rather than the calculation based on a particular quantity of cocaine base.

We conclude that the district court calculated Mr. Price's sentence based on the cross reference to first degree murder and that his sentence was not dependent on a particular quantity of cocaine base. Amendment 750 does not affect Mr. Price's offense level, and we may not modify his sentence under 18 U.S.C. § 3582(c)(2). *See* U.S.S.G. § 1B1.10(a)(2)(B).

Mr. Price also argues that application of the first-degree murder cross reference was "legally inappropriate[]." Aplt. Br. at 7. He contends that it was improper for the district court to apply the first-degree murder cross reference and that he did not have notice that the district court intended to do so.

Section 1B1.10(b)(1) of the Guidelines states that in determining whether to reduce a defendant's sentence, "the court shall substitute only the [covered amendments] . . . and *shall leave all other guideline application decisions unaffected*." (Emphasis added). Because Amendment 750 does not affect the applicability of the first-degree murder cross reference, Mr. Price's arguments as to whether applying the cross reference was proper are inappropriate here.

-9-

### III.    CONCLUSION

For the foregoing reasons, we affirm the district court.  We also deny Mr. Price's motion to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge